**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Joseph E. VOGLER,**
**Defendant–Appellant,**

v.

**NORTHERN ALASKA ENVIRONMEN-**
**TAL CENTER; Sierra Club, Alaska**
**Chapter; the Wilderness Society, Plain-**
**tiff–Intervenors.**

No. 87–3798.

United States Court of Appeals,
Ninth Circuit.

Submitted May 6, 1988 *.

Memorandum Filed July 29, 1988.

Decided Sept. 28, 1988.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Thomas R. Wickwire, Fairbanks, Alaska, for defendant-appellant.

Bruce M. Landon, U.S. Dept. of Justice, Anchorage, Alaska, Martin W. Matzen, Jacques B. Gellin, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Lauri J. Adams, Sierra Club Legal Defense Fund, Juneau, Alaska, for plaintiff-intervenors.

Before WRIGHT and CANBY, Circuit Judges, and RHOADES,** District Judge.

## ORDER

The request for publication of the memorandum disposition filed July 29, 1988 is granted. Accordingly, pursuant to Circuit

** The Honorable John Rhoades, Sr., United States District Judge for the Southern District of

Rule 36–4, the attached opinion is ordered filed as the decision of the court.

## OPINION

CANBY, Circuit Judge:

## NATURE OF THE CASE

Vogler appeals the district court's grant of partial summary judgment in favor of the government. The district court granted a permanent injunction prohibiting Vogler from operating off-road vehicles in Alaska's Yukon–Charley Rivers National Preserve without first obtaining an access permit. In addition, the injunction prohibited Vogler from conducting placer mining operations within the Preserve without submitting and obtaining approval of a mining operations plan.

On appeal, Vogler argues that (1) the government has no power to create National Parks and no power to regulate his access and mining of claims within the park; (2) the government has no power to regulate his use of the park's trail because the trail is an established right of way under R.S. 2477; (3) the government's regulations amount to an unconstitutional taking in violation of the fifth amendment; and (4) the government's regulations violate Articles 73 and 74 of the United Nations Charter. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 1292(a)(1) and we affirm.

## FACTUAL BACKGROUND

The Yukon–Charley Rivers National Preserve was created and made a part of the National Park System by the Alaska National Interest Lands Conservation Act ("ANILCA"), 16 U.S.C. § 410hh(10). The Preserve is listed among the areas established as units of the National Park System to be "administered by the Secretary [of the Interior] under the laws governing the administration of such lands and under the provisions of [the ANILCA]." 16 U.S.C. § 410hh. The Secretary's regulations pro-

California, sitting by designation.

vide, among other things, that an access permit must be obtained before operating heavy, off-road vehicles in the Preserve. *See* 16 U.S.C. § 3170. In evaluating a permit application, the Park Service must provide an applicant with "adequate and feasible" access to any mine claim owned within the Preserve. *Id.* In addition, the Secretary's regulations require a miner to submit and obtain approval of a mining plan of operations before mining his claims. 16 U.S.C. § 1902.

Vogler is a placer miner who owns between 50 and 150 patented and unpatented mining claims within the Preserve. On the evening of July 11, 1984, the Preserve's Chief Ranger learned that Vogler was approaching the boundaries of the Preserve, operating a multi-ton D–8 Caterpillar and a multi-ton, all terrain Delta–3 transport vehicle on what is commonly called the Bielenberg trail. The following day, the Preserve's Ranger stopped Vogler and asked whether he had a permit to transport and operate his equipment in the Preserve. Vogler informed him that he felt the government had no power to require him to get a permit and he proceeded to transport his vehicles through the Preserve.

The government applied for and received a temporary restraining order. Vogler was served with the order on July 14, and he immediately ceased operating the two vehicles, leaving them on the trail. The government then applied for a preliminary injunction prohibiting Vogler from operating his vehicles on the trail without a permit and from mining his claims without submitting a mining operations plan. A hearing was held during which Vogler testified on the details of his trip down the Bielenberg trail. He noted that the marshy condition of the trail in the summer made it necessary to travel with the Caterpillar alongside the transport vehicle, off the trail. He acknowledged that this process "raises cain" with the trail. In addition, he testified that when he came to streams or creeks, he cut bunches of poles and trees, making a "bridge" so he could cross.

The government introduced a series of witnesses who testified on the damage Vogler caused within the Preserve. Experts testified to observing uprooted trees, areas where all the vegetation had been scraped away, and a strip about six feet wide along the side of the trail where vegetation had been flattened by Vogler's Caterpillar. One expert noted that some of the areas could require up to 100 years to return to their original condition.

The court rejected each of Vogler's four affirmative defenses, the same ones he raises now on appeal, and found that a permanent injunction was necessary to prevent Vogler from moving his equipment and mining his claims without first obtaining the necessary federal access permit and approval of mining plans. The court granted the government's motion for a partial summary judgment and, following a second hearing, entered judgment pursuant to Fed.R.Civ.P. 54(b).[1]

## DISCUSSION

On appeal, Vogler does not take issue with the district court's factual findings; rather, he challenges pure issues of law. We review Vogler's legal arguments *de novo*. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.1984) (en banc).

I. *Federal Authority to Regulate Access and Mining Within Alaska's National Parks.*

Vogler contends that Congress has no authority to regulate the Yukon–Charley Rivers Preserve and that he cannot be required to obtain a permit before moving heavy equipment through the Preserve area or operating a mine in the area. Vogler asserts that the property clause of the Constitution, U.S. Const. art. IV, § 3, cl. 2, was intended by the Framers to be a temporary provision only and that Congress has power to regulate and govern only those lands that were within the United

---

**1.** The government brought an additional claim under the Clean Water Act, which the court declined to resolve. In addition, the government brought a claim for monetary damages which the court scheduled for trial.

States at the time the Constitution was ratified. He bases his argument on Chief Justice Taney's analysis of the property clause in *Dred Scott v. Sandford*, 60 U.S. (19 How.) 393, 436–38, 15 L.Ed. 691 (1856). Furthermore, he contends that once Alaska became a state, the United States could only hold and regulate land within it to further one of the enumerated powers granted to Congress in art. 1, § 8. We reject Vogler's arguments because they are contrary to well-settled Supreme Court precedent establishing the broad power granted to the government in the property clause to regulate federal lands. *Kleppe v. New Mexico*, 426 U.S. 529, 96 S.Ct. 2285, 49 L.Ed.2d 34 (1976).

■ The property clause of the Constitution provides that "Congress shall have the Power to dispose of and make all needful Rules and Regulations respecting the Territory or other property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2. The Yukon–Charley Rivers National Preserve is federal land, subject to regulation under the property clause. The Preserve was created and designated part of the National Park System by the Alaska National Interest Lands Conservation Act ("ANILCA"), 16 U.S.C. § 410hh(10). Under the Alaska Statehood Act, Congress retained its authority over federal lands within Alaska in return for the land granted to the state. It is not necessary, as Vogler asserts, that Congress act pursuant to an enumerated power in creating a National Park; Congress has the power to retain federal land for important public purposes. *See e.g., Standard Oil Co. Of California v. United States*, 107 F.2d 402, 409 (9th Cir.1939), *cert. denied*, 309 U.S. 654, 60 S.Ct. 469, 84 L.Ed. 1003 (1940).

■ Congressional power to regulate federal land under the property clause is in no way limited to the regulation of land held before ratification of the Constitution. *See e.g., Kleppe v. New Mexico*, 426 U.S. 529, 96 S.Ct. 2285, 49 L.Ed.2d 34 (1976) (upholding congressional exercise of property clause power affecting land acquired

after ratification of the Constitution). In addition, Vogler's argument that the government can regulate only property ceded to it by a state or a landowner is without merit. In *Kleppe v. New Mexico*, the Court held that the presence or absence of the jurisdiction acquired by cession is irrelevant to Congress' powers under the property clause. *Kleppe*, 426 U.S. at 542–43, 96 S.Ct. at 2293–94. Congress' power under the property clause is extensive; "the property clause gives Congress the power over public lands 'to control their occupancy and use, to protect them from trespass and injury and to prescribe the conditions upon which others may obtain rights in them....'" *Id.* at 540, 96 S.Ct. at 2292 (quoting *Utah Power & Light Co. v. United States*, 243 U.S. 389, 405, 37 S.Ct. 387, 389, 61 L.Ed. 791 (1917)).

■ The requirements at issue here are designed to protect federal land from injury and trespass. Vogler's attacks on their validity are without merit. The regulations do not deprive Vogler of "adequate and feasible" access to his claims. *See* 16 U.S.C. § 3170(b). The Park Service has simply required that Vogler apply for a permit to transport his offroad vehicles through the Preserve and that he submit a mining plan before beginning operations.[2] The extensive damage Vogler caused along the Bielenberg trail demonstrates the necessity for a permit procedure to regulate off-road travel, especially during the summer when the ground is soft. This case demonstrates all too clearly that compliance with the Park Service's permit regulations is essential to ensuring the protection of the Preserve's natural beauty and value. These regulations are designed to "conserve the scenery and the natural and historic objects and the wildlife therein and to ... leave them unimpaired for the enjoyment of future generations." 16 U.S.C. § 1. They are, therefore, authorized by ANILCA and within the power granted under the property clause.

---

**2.** The court's injunction against Vogler respects the permit procedure; the injunction will termi

nate of its own effect as soon as Vogler obtains a permit.

## II. Federal Authority To Regulate Travel On An Established Right of Way.

■ Vogler argues that the government is without power to regulate his travel on the Bielenberg trail because the trail is a right of way established under R.S. § 2477.[3] Even if we assume that the trail is an established right of way, we do not accept Vogler's argument that the government is totally without authority to regulate the manner of its use.[4]

Congress has made it clear that the Secretary has broad power to regulate and manage national parks. The Secretary's power to regulate within a national park to "conserve the scenery and the nature and historic objects and wildlife therein...." applies with equal force to regulating an established right of way within the park. See 16 U.S.C. § 1. In Wilkenson v. Dept. of Interior, 634 F.Supp. 1265 (D.Colo.1986), the district court of Colorado upheld the authority of the National Park Service to ban commercial access along an established RS 2477 right of way within the Colorado National Monument, and the court rejected an area resident's claim that the use of the road could not be regulated. Id. at 1279. The court found the regulation to be well within the broad grant of power under 16 U.S.C. § 1. Id. Similarly, the regulations here are necessary to conserve the natural beauty of the Preserve; therefore, they lie within the government's power to regulate national parks. Moreover, the Mining in the Parks Act provides that "all activities resulting from the exercise of valid existing mineral rights on patented or unpatented mining claims within any area of the National Park System shall be subject to such regulations prescribed by the Secretary of the Interior as he deems necessary or desirable for the preservation and management of those areas." 16 U.S.C. § 1902.[5] Thus, the government is not without authority to regulate the manner of Vogler's use of the Bielenberg trail.

## III. Vogler's Unconstitutional Taking Defense.

■ Vogler contends that enforcement of the government's regulations would result in an unconstitutional taking of his property rights. This argument is not ripe for judicial resolution, however, because Vogler never attempted to apply for a permit and he never submitted a mining plan. See Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172, 186, 105 S.Ct. 3108, 3117, 87 L.Ed.2d 126 (1985) (a taking claim based on regulations is not ripe for adjudication until the entity charged with implementing the contested regulations reaches a final decision regarding their application). The very existence of a permit system implies that permission may be granted; therefore, it is only after a permit has been denied and the denial's effect prevents the "economically viable" use of land that it can be said a "taking" occurred. United States v. Riverside Bayview Homes, Inc., 474 U.S. 121, 127, 106 S.Ct. 455, 459, 88 L.Ed.2d 419 (1985). Vogler has steadfastly refused to apply for a permit or seek approval of a mining operations plan. His fifth amendment taking defense is, therefore, not ripe for adjudication.[6]

---

**3.** Section 2477 of the Revised Statutes provided: The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted.
This statute was repealed in 1976 with existing rights of way expressly preserved. 43 U.S.C. 1769(a).

**4.** Our disposition of this issue makes it unnecessary for us to decide whether or not the Bielenberg trail is actually an established right of way under R.S. § 2477.

**5.** Appellant has brought to our attention the Tenth Circuit's recent opinion in Sierra Club v. Hodel, 848 F.2d 1068 (10th Cir.1988), which we find is distinguishable from this case. We note that in Sierra Club, the Tenth Circuit recognized that permits may be required to prevent the unreasonable degradation of a wilderness study area, even if access to the area could not be totally denied. Id. at 1088. There is no need for us to delineate what precise use, if any, Vogler might properly make of the Bielenberg trail because he did not apply for a permit.

**6.** Even if Vogler were to obtain an adverse decision from the Secretary on his permit application and mining plan, his taking defense would still fail because "an alleged taking is not unconstitutional unless just compensation is unavailable." Hodel v. Virginia Surface Mining & Reclamation Association, 452 U.S. 264, 297 n. 40,

## IV. *Vogler's United Nations Charter Defense.*

Finally, Vogler contends that the government's regulations cannot be enforced because they are contrary to provisions of the United Nations Charter regarding "territories whose peoples have not yet attained a full measure of self-government." U.N. CHARTER art. 73. Vogler has failed to demonstrate any manner in which the proposed regulations conceivably violate the Charter.

### CONCLUSION

For the above reasons, the district court's grant of a permanent injunction and partial summary judgment is AFFIRMED.

101 S.Ct. 2352, 2371 n. 40, 69 L.Ed.2d 1 (1981). Thus, even if Vogler's claim were both justicia-ble and meritorious, his remedy would lie in a suit for compensation.