The Honorable H.G. Foster Prosecuting Attorney, 20th Judicial District Post Office Box 1105 Faulkner County Courthouse Conway, Arkansas 72033
Dear Mr. Foster:
This is in response to your request for an opinion concerning the regulation of traffic on county roads that run through the Buffalo River National Park.
You state that a number of local people currently utilize roads that run through the national park but that are maintained by Searcy County. Of primary concern are local woodcutters who are required to obtain a permit and route instructions in using roads that run through the park. You indicate that the woodcutters disagree with "the authorities" as to issues such as grade and road surface conditions in determining which routes they are required to take. Specifically, you pose the following question: "Who has superior authority to regulate traffic on roads maintained by the county, and deemed by the county to be county roads, that pass through the Buffalo National River area in Searcy County."
A complete resolution of this matter would require an examination of the particular requirements or regulations at issue. However, it is my opinion that with regard to the general issue of who has superior authority over the regulation of traffic within the park, National Park Service regulations would take precedence over county or state law.
The establishment of the Buffalo National River is codified at16 U.S.C. § 460m-8, which provides in part:
 For the purposes of conserving and interpreting an area containing unique scenic and scientific features, and preserving as a freeflowing stream an important segment of the Buffalo River in Arkansas for the benefit and enjoyment of present and future generations, the Secretary of the Interior . . . may establish and administer the Buffalo National River. The boundaries of the national river shall . . . be on file . . . in the offices of the National Park Service. . . . [T]he total acreage within such boundaries shall not exceed ninety-five thousand seven hundred and thirty acres.
Pursuant to 16 U.S.C. § 1a-3, the Secretary of the Interior ("Secretary") may relinquish to a state all or part of the United State's legislative jurisdiction over national park lands. The procedure for doing so under Arkansas statutes is codified at A.C.A. § 22-7-102 (1987). Subsection (e)(3) states in relevant part that "this state's exercise of jurisdiction shall be without prejudice to the right of the United States to assert and exercise such concurrent legislative jurisdiction as may be vested in or retained by it over the land or other area."
The Buffalo National River area is one of a number of sites over which Arkansas and its counties exercise concurrent legislative jurisdiction with the federal government. See A.C.A. § 22-7-223(a)(4). Concurrent jurisdiction can be exercised by both state and federal courts at the same time, over the same subject matter and within the same territory where resort may be had to either court. Nielson v. State of Oregon,212 U.S. 315 (1909). Although I could find no Arkansas case law on point, the United States Supreme Court, as well as other jurisdictions, has acknowledged the superior authority of the federal government over publicly acquired lands. See Arthur v. Fry, 300 F. Supp. 622 (E.D. Tenn. 1969); Kleppe v. New Mexico, 426 U.S. 529 (1976); Free Enterprise CanoeRenters Ass'n. v. Watt, 711 F.2d 852 (8th Cir. 1983); Wilkenson v. Dept.of Interior of United States, 634 F. Supp. 1265 (D. Colo. 1986); UnitedStates v. Vogler, 859 F.2d 638 (9th Cir. 1988).
One of the issues addressed in Wilkenson v. Dept. of Interior, supra, was the authority of the National Park Service ("NPS") to regulate commercial traffic along an established right of way within the boundaries of the Colorado National Monument. The district court cited 16 U.S.C. § 1, which authorizes the NPS to "promote and regulate" national parks in order to "conform to [their] fundamental purpose," which purpose is "to conserve the scenery and the natural and historic objects and the wildlife therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations." To this end, 16 U.S.C. § 3 grants the Secretary the authority to make rules and regulations "as he may deem necessary or proper." The court noted that although these statutes do not expressly
authorize the regulation of commercial traffic, the Secretary's authority was "very broad" and the disputed regulations fell well within his power. Wilkenson, 634 F.Supp. at 1279. Size and weight restrictions were noted to be "appropriate matters for regulation." Id.
The ban of commercial vehicles on park roads was also at issue in Arthurv. Fry, supra. The court first noted the Secretary's "broad powers to control and regulate the lands in the National Park System."300 F.Supp. at 625. Citing 16 U.S.C. § 3, as well as the statutes specifically pertaining to the Great Smoky Mountains National Park, the court stated that "on their face, these statutes authorize the Secretary and his agents to regulate traffic within the parks." Id.
In both Wilkenson and Arthur, the NPS was acting under regulations set forth at 36 C.F.R. § 5.6, which bans the use of commercial vehicles within park areas absent special permission. In addition, the Secretary may require special permits for such vehicles. I have not been provided with the requirements and regulations at issue in this case and reference is made only to disputes over such issues as grade and road surface conditions. The above regulations, however, would have equal application to the Buffalo National River area. Perhaps also relevant is36 C.F.R. § 4.11 which regulates the load, weight, and size limits of vehicles operated on park roads and § 4.22 which defines conditions under which the operation of a vehicle constitutes unsafe driving.
You indicated in your correspondence that the roads at issue are maintained by the county. The Eighth Circuit Court of Appeals, in FreeEnterprise Canoe Renters Ass'n v. Watt, supra, held that the fact that the state or county owns or maintains the roads within the national park is irrelevant. The court rejected appellant's argument that a federal regulation requiring permits for the delivery and retrieval of rented canoes within the boundaries of the Ozark National Scenic Riverways did not apply to nonfederal public roads within the park. "The phrase `within the boundaries' in the regulation means everything within the outer boundaries of the [Ozark National Scenic Riverways], including state and county roads . . . and the regulation makes no distinction on the basis of ownership." Watt, 711 F.2d at 856. See also 36 C.F.R. § 4.1, which provides that the regulations apply "regardless of land ownership, on all roadways . . . within a park area that are open to public traffic and that are under the legislative jurisdiction of the United States." (emphasis added.)
It is thus clear, in my opinion, that Congress has granted the National Park Service authority to regulate traffic on roads within national park boundaries. As to whether the disputed rules and regulations in this particular case fall within that statutory grant of authority, such a determination requires an examination of all the facts, including the specific rules and regulations at issue, and is therefore outside the purview of this office. Assuming, however, the regulations at issue are within the NPS's scope of authority, the United States Supreme Court has made it clear that such authority takes precedence over local law.
The Property Clause of the United States Constitution provides in relevant part: "Congress shall have power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States." U.S. Const. Art IV, § 3, cl. 2. This provision of the constitution was invoked in Kleppe v. New Mexico,426 U.S. 529 (1976). At issue there was the "Wild Free-Roaming Horses and Burros Act" which was enacted by Congress to protect and manage wild horses and burros on all public lands of the United States. The State of New Mexico claimed the act conflicted with its Estray Law. Rejecting New Mexico's argument that Congress could not act contrary to state law absent its consent by cessation of jurisdiction, the Court stated:
 [W]hile congress can acquire exclusive or partial jurisdiction over lands within a State by the State's consent or cession, the presence or absence of such jurisdiction has nothing to do with Congress' powers under the Property Clause. Absent consent or cession a State undoubtedly retains jurisdiction over federal lands within its territory, but Congress equally surely retains the power to enact legislation respecting those lands pursuant to the Property Clause. And when Congress so acts, the federal legislation necessarily overrides conflicting state laws under the Supremacy Clause.
Kleppe, 426 U.S. at 543(citations omitted.)
As previously discussed, Congress has granted the Secretary of the Interior the authority to make necessary rules and regulations to carry out the "fundamental purpose" of conserving the scenery and history of the country's national parks. 16 U.S.C. §§ 1, 3. As a general matter, and assuming the NPS is acting under valid regulatory authority, such authority will, in my opinion, prevail over county authority with regard to the regulation of traffic within the Buffalo National River area.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Sarah L. James.
Sincerely,
WINSTON BRYANT Attorney General
WB/SLJ:cyh