42 F.3d 1522
 25 Envtl. L. Rep. 20,360
 Leroy CLOUSER and Sharon Clouser (Owners of the Robert E.
Mining Claims), Carl E. Setera, Judith M. Setera, Anthony S.
Setera and Lois A. Setera (Owners of the Thunderbolt Mining
Claims), Gary Hoefler, Don Wurster, Cameron Anderson and
Robin Anderson (Owners of the Wilson Mining Claim),
Plaintiffs-Appellants,
v.
Mike ESPY, Secretary of Agriculture, United States of
America, Dale Robertson, Chief Forester, Forest Service,
John Butruille, Regional Forester, Pacific Northwest Region,
Jeff Blackwood, Forest Supervisor, Umatilla National Forest,
Craig Smith Dixon, District Ranger, North Fork John Day
Ranger District, Mike Lunn, Forest Supervisor, Siskiyou
National Forest, Dennis Holthus, District Ranger, Illinois
Valley Ranger District, Bruce Babbitt, Secretary of the
Interior, Cy Jamison, Director of the Bureau of Land
Management, D. Dean Bibles, State Director, Oregon State
Office, Defendants-Appellees.
 No. 93-35051.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 13, 1994.
Decided Dec. 7, 1994.
 
 1
 Philip F. Schuster, II and Roger F. Dierking, Portland, OR, for plaintiffs-appellants.
 
 
 2
 Peter A. Appel, Robert L. Klarquist and Alexandra A.E. Shapiro, U.S. Dept. of Justice, Washington, DC, for defendants-appellees.
 
 
 3
 Appeal from the United States District Court for the District of Oregon.
 
 
 4
 Before: TANG and WIGGINS, Circuit Judges, and HENDERSON,* District Judge.
 
 THELTON E. HENDERSON, District Judge:
 
 5
 This case is a lawsuit by holders of certain mining claims located on federal land within National Forests. The claim holders challenge rulings by the U.S. Forest Service that, among other things, refused under certain circumstances to permit them to use motor vehicles to access their claims, requiring them instead to use pack animals. On the parties' cross motions for summary judgment, the district court granted summary judgment for defendants and plaintiffs appealed. For the reasons set forth below, we affirm.
 
 I. BACKGROUND
 A. OVERVIEW
 
 6
 This lawsuit is brought by three different sets of plaintiffs, all of whom have asserted rights to mine in areas located wholly within federal national forest lands. Two of the claims are located in regions designated "wilderness areas" pursuant to the Wilderness Act of 1964, 16 U.S.C. Secs. 1131-1136, and the third is located on national forest land that is part of the National Wild and Scenic Rivers System, 16 U.S.C. Sec. 1271. In each case, the national forest land in which the mining claims are located was at one time open to the public for exploration, prospecting, and the extraction of minerals;[1] however, the land was subsequently withdrawn from mineral entry under the Wilderness Act or the Wild and Scenic Rivers Act, so that only persons establishing that they discovered a valuable mineral deposit prior to the withdrawal possess a valid right to mine claims there (a "valid claim"). All three sets of claims at issue are unpatented.[2]
 
 
 7
 The validity of such claims is determined by the U.S. Department of the Interior ("Interior") through its Bureau of Land Management ("BLM"), which administers the federal laws governing the right to stake mining claims on federal land. However, the claims are located on national forest lands which otherwise are regulated by the U.S. Forest Service ("Forest Service" or "Service"), a part of the U.S. Department of Agriculture ("Agriculture"). This case involves a challenge to certain decisions made by the Forest Service with respect to plans proposed by the plaintiffs for mining the three sets of claims at issue.
 
 
 8
 The challenged Forest Service decisions are: (1) Forest Service rulings refusing to permit motorized access to, or to approve the conduct of other mining activities on, certain claims, pending determination of claim validity by the Department of the Interior (the "Wilson" and "Robert E." claims); (2) Forest Service rulings that, even for valid claims, access to claims located within federal national forest lands should be limited to non-motorized means where the Forest Service considers such means adequate to carry out the proposed mining operations (the "Robert E." and "Thunderbolt" claims); and (3) a Forest Service ruling requesting that plaintiffs file a plan of proposed mining operations, as required by Forest Service regulations (the "Wilson" claim).
 
 
 9
 B. DESCRIPTION OF THE THREE GROUPS OF MINING CLAIMS AT ISSUE AND THE ADMINISTRATIVE PROCEEDINGS PRECEDING THIS LITIGATION
 
 1. THE ROBERT E. MINING CLAIMS
 
 10
 The Robert E. claims, owned by plaintiffs Leroy and Sharon Clouser, are part of the Siskiyou National Forest and are located in Curry County, Oregon. The claims are located on land that was included in the Siskiyou Forest Reserve on October 5, 1906, and withdrawn from mineral entry when it became part of the Kalmiopsis Wilderness on September 3, 1964. ER at 150.[3]
 
 
 11
 In 1985, the Forest Service conducted a mineral examination of the Robert E. claims and initiated contest proceedings in the Department of the Interior to have the claims declared void, on the ground that no valuable mineral deposits had been discovered there before 1964 when the land was withdrawn from mineral entry.[4] An Interior Department Administrative Law Judge ("ALJ") held the claims null and void, and plaintiffs have appealed that decision to the Interior Department's Board of Land Appeals. ER at 220 n. 4.
 
 
 12
 In June 1990, plaintiffs filed a plan of operations with the Forest Service, proposing certain mining activities on the Robert E. claims. The plan proposed accessing the claims by using motor vehicles to drive to the claims across surrounding national forest wilderness lands. The Forest Supervisor approved the plan subject to certain conditions, one of which was that plaintiffs would have to use non-motorized means such as pack animals to access the claims. SER at 55-57. Plaintiffs appealed this decision to the Deputy Regional Forester who affirmed it in October 1990.
 
 2. THE THUNDERBOLT MINING CLAIMS
 
 13
 The Thunderbolt claims, owned by plaintiffs Carl, Judith, and Anthony Setera, are located in the Umatilla National Forest in Oregon. The lands on which the claims are located were included in the Blue Mountain Forest Reserve on March 15, 1906; these lands were withdrawn from mineral entry and became part of the North Fork John Day Wilderness Area on June 26, 1984. There are six claims; five were located in 1980 and the sixth in 1982. For purposes of this case only, the government has agreed to assume that Thunderbolt claim # 2, the only claim involved in this case, is valid. SER at 26.
 
 
 14
 In August 1988, the plaintiffs filed a notice of intent and plan of operations proposing the use of a "suction dredge" and other equipment to test Thunderbolt claim # 2. They proposed motorized access over two Forest Service trails covering a distance of approximately four miles in the wilderness. This proposed route had been gated and blocked from traffic in 1984 after the land was included in the North Fork John Day Wilderness Area. SER at 49. In November 1988, the Forest Supervisor issued a decision restricting plaintiffs to using pack animals or other non-motorized means of access, on the ground that motorized access was not essential due to the limited nature of the proposed operation. ER at 62-63; ER at 152.
 
 
 15
 In May 1989, plaintiffs proposed another plan of operations, which they revised in July 1989. The revised plan proposed use of a five-inch suction dredge and motorized access over the same two Forest Service roads. ER at 69-71. In August 1989, the Forest Supervisor determined, based on an environmental assessment that had been conducted in 1988, that the plan could not be approved as submitted because motorized access was not necessary given the low level of proposed operations and because of the Forest Service's statutory mandate to preserve the wilderness characteristics of the lands in question. ER at 73-74. The Forest Supervisor directed the plaintiffs to amend the operating plan and to provide for access by horses or other non-motorized means. ER at 73-74.
 
 
 16
 Plaintiffs appealed, and in February 1990 the Deputy Regional Forester affirmed the Forest Supervisor's decision limiting access to non-motorized means. The plaintiffs filed a petition for discretionary review of this decision with the Chief of the Forest Service, but it was denied. ER at 102.
 
 3. THE WILSON PLACER MINING CLAIM
 
 17
 The Wilson Claim, owned by plaintiffs Gary Hoefler, Don Wurster, and Cameron and Robin Anderson, is located along the Illinois River in Josephine County, Oregon. It is part of the Siskiyou National Forest and the Illinois River component of the Wild and Scenic Rivers System. ER at 148. The lands on which it is located were withdrawn from mineral entry on January 7, 1926, pursuant to Sec. 24 of the Federal Power Act of 1920, codified as amended at 16 U.S.C. Sec. 818. The land was reopened to mineral entry in 1955, but withdrawn again pursuant to the Wild and Scenic Rivers Act of 1968, 16 U.S.C. Sec. 1271 et seq. The Forest Service's records indicate that the claim was located on July 14, 1934, at a time when the lands were not open to mineral entry. SER at 2-7, 10, 12.
 
 
 18
 In September 1988, plaintiffs submitted a plan of operations to the District Ranger of the Siskiyou National Forest proposing mining activities on the claim. ER at 38. The District Ranger acknowledged receiving the plan but explained that he could not approve it until the claim's validity could be established. ER at 39. In January 1989, plaintiffs submitted a revised plan of operations. The District Ranger again refused to approve the plan because of doubts about the claim's validity. He explained that he had asked the BLM to determine the status of the lands encompassed by the Wilson claim and would await the BLM determination on the validity of the claim before making a final decision on the proposed plan of operations. ER at 40-41.
 
 
 19
 In March 1990, plaintiffs submitted a notice of intent to file a plan of operations. In April 1990, the District Ranger wrote back, explaining that the Forest Service could not approve mining operations on the claim until it received a BLM opinion on the legal land status of the claim "demonstrat[ing] that a valuable mineral deposit existed as of the date of the withdrawal." ER at 42-43. Plaintiffs filed a notice of appeal. ER at 44.
 
 
 20
 In the meantime, on June 6, 1990, the BLM issued a decision declaring the Wilson claim null and void on the ground that the claim was located at a time when the land in question had been withdrawn from mineral entry. The plaintiffs appealed the BLM decision to the Interior Board of Land Appeals. SER at 12, 14. Following the BLM decision, the Acting Forest Supervisor dismissed plaintiffs' Forest Service appeal as moot. ER at 47.
 
 
 21
 Plaintiffs then requested that the Regional Forester stay the decision mooting their appeal of the District Ranger's decision of April 1990. ER at 48, 50. The Deputy Regional Forester wrote back that the District Ranger's decision not to approve the notice of intent until the BLM decision had been issued was not an appealable decision; he explained that the purpose of a notice of intent is to assist the District Ranger in determining whether a plan of operations is required, and that only a decision on the actual plan of operations, when issued, would be appealable under 36 C.F.R. Part 251. ER at 54.
 
 
 22
 Plaintiffs filed another notice of intent in October 1990. The District Ranger determined that because the proposed operations would "likely cause significant disturbance of surface resources," the Forest Service regulations required that plaintiffs file a plan of operations. The District Ranger also noted that the BLM had declared the Wilson claim null and void, but recognized that "you have appeal rights [within Interior] to this decision and have a valuable interest to protect by maintaining assessment work during the appeal process." ER at 56, 58. Plaintiffs have not submitted a plan of operations pursuant to the District Ranger's decision.
 
 
 23
 In September 1993, well after this suit was filed and while this appeal was pending, the Interior Department Board of Land Appeals affirmed the BLM's decision ruling the Wilson claim null and void.
 
 C. THIS LAWSUIT
 
 24
 Plaintiffs filed suit jointly against the Secretary of Agriculture and various Forest Service and Interior officials, seeking only declaratory and injunctive relief requiring the defendants to grant plaintiffs motorized access to their mining claims and permit them to conduct mining operations. ER at 1-21. The district court referred the case to a magistrate judge. On the parties' cross-motions for summary judgment, the magistrate judge recommended granting the government's summary judgment motion and denying plaintiffs' summary judgment motion. ER at 146. The district court, after reviewing plaintiffs' objections to the magistrate's report, adopted most of the findings of the magistrate and proceeded to grant defendants' summary judgment motion and deny plaintiffs'. This appeal followed.
 
 II. STANDARD OF REVIEW
 
 25
 The district court's grant of summary judgment for the government is reviewed de novo by the court of appeals. United States v. City of Spokane, 918 F.2d 84, 86 (9th Cir.1990), cert. denied, 501 U.S. 1250, 111 S.Ct. 2888, 115 L.Ed.2d 1053 (1991).
 
 
 26
 III. THE FOREST SERVICE'S AUTHORITY TO REGULATE INGRESS TO
 
 
 27
 AND EGRESS FROM MINING CLAIMS LOCATED IN NATIONAL
 
 FOREST LANDS
 
 28
 In their complaint, plaintiffs challenged the Forest Service's rulings on, inter alia, the ground that the Service lacked statutory authority to regulate ingress to and egress from mining claims located in national forest lands.[5] In the course of granting summary judgment for defendants and denying summary judgment for plaintiffs, the district court ruled that, as a matter of law, the Department of Agriculture, through the Forest Service, has authority to regulate the means of transportation that plaintiffs may use to cross the national forest areas that surround their claims in order to gain access to the claims. ER at 218. Plaintiffs now challenge that ruling on appeal.
 
 A. PLAINTIFFS' ARGUMENT
 
 29
 Plaintiffs assert--no doubt correctly--that the means of access permitted materially affects the commercial viability of mining claims. Under the legal standard applied by the Department of the Interior to determine whether a putative claim is "valid," validity depends in part on commercial viability.[6] On this basis, plaintiffs argue that adjudication of questions concerning access materially affects claim validity. They therefore contend that adjudication of such issues is committed to the exclusive jurisdiction of the Department of the Interior since, the parties agree, Interior is the agency authorized to adjudicate the validity of mining claims.
 
 
 30
 Although all three of the claims at issue in this suit are located within national forests, only two of them--the Robert E. and Thunderbolt claims--are located within areas that have been designated "wilderness areas" pursuant to the Wilderness Act. Because the Forest Service has special statutory authority to regulate activities in wilderness areas, we shall address separately the question of Forest Service regulation of access to claims located in wilderness areas and non-wilderness areas.B. CLAIMS ON NATIONAL FOREST LANDS THAT ARE DESIGNATED AS "WILDERNESS AREAS": THE ROBERT E. AND THUNDERBOLT CLAIMS
 
 
 31
 As to these two claims located in wilderness areas, there can be no doubt whatsoever that the Forest Service enjoys the authority to regulate means of access, for the Department of Agriculture has expressly been granted statutory authority to do so. 16 U.S.C. Sec. 1134(b) provides that
 
 
 32
 In any case where valid mining claims or other valid occupancies are wholly within a designated national forest wilderness area, the Secretary of Agriculture shall by reasonable regulations consistent with the preservation of the area as wilderness, permit ingress and egress to such surrounded areas by means which have been or are being customarily enjoyed with respect to other such areas similarly situated.
 
 
 33
 This provision's unambiguous instruction to the Secretary of Agriculture to permit ingress and egress to such areas "by means which have been or are being customarily enjoyed with respect to other such areas similarly situated" clearly implies an authority and duty to determine what means are being or have been "customarily enjoyed" in like areas. Indeed, the provision expressly empowers the Secretary to promulgate "reasonable regulations" implementing the statutory mandate. Although Forest Service decisions regarding access may indeed affect whether a claim is found to be "valid," that fact in no way alters 16 U.S.C. Sec. 1134(b)'s unequivocal delegation of authority to the Secretary of Agriculture. While Congress has assigned to Interior authority to adjudicate claim validity, it is free to allocate regulatory authority as it chooses and in 16 U.S.C. Sec. 1134(b) it has empowered Agriculture to make decisions regarding a particular issue that happens to have collateral consequences for claim validity.
 
 
 34
 C. CLAIMS ON NATIONAL FOREST LANDS THAT ARE NOT DESIGNATED "WILDERNESS AREAS": THE WILSON CLAIM
 
 
 35
 National forest lands that are not designated as wilderness areas are not covered by 16 U.S.C. Sec. 1134(b). However, the government maintains that other grants of statutory authority empower the Department of Agriculture to regulate the means that may be used to access mining claims that are located in nonwilderness area national forest lands. The government relies on two provisions of the Organic Administration Act of 1897, which established the national forest system. That statute authorizes the Secretary of Agriculture to promulgate rules and regulations to protect the national forest lands from destruction and depredation. 16 U.S.C. Sec. 551.[7] Further, it specifies that persons entering the national forests for the purpose of exploiting mineral resources "must comply with the rules and regulations covering such national forests." 16 U.S.C. Sec. 478.[8]
 
 
 36
 Interpreting the scope of the Forest Service's grant of regulatory authority, this circuit has held that
 
 
 37
 The Forest Service may properly regulate the surface use of forest lands. While the regulation of mining per se is not within Forest Service jurisdiction, where mining activity disturbs national forest lands, Forest Service regulation is proper. See United States v. Weiss, 642 F.2d 296, 298 (9th Cir.1981) (Secretary of Agriculture has "power to adopt reasonable rules and regulations regarding mining operations within the national forests"); United States v. Richardson, 599 F.2d 290 (9th Cir.1979), cert. denied, 444 U.S. 1014[, 100 S.Ct. 663, 62 L.Ed.2d 643] (1980) (recognizing the conflict between mining and forest land policies and holding that the district court may properly enjoin unreasonable destruction of surface resources).
 
 
 38
 United States v. Goldfield Deep Mines Co., 644 F.2d 1307, 1309 (9th Cir.1981), cert. denied, 455 U.S. 907, 102 S.Ct. 1252, 71 L.Ed.2d 445 (1982). In Goldfield and several other cases, this court has upheld Forest Service authority to regulate mining operations in national forests by requiring miners to submit for approval operating plans for their proposed operations. See United States v. Weiss, 642 F.2d 296, 298 (9th Cir.1981); United States v. Doremus, 888 F.2d 630, 632 (9th Cir.1989), cert. denied, 498 U.S. 1046, 111 S.Ct. 751, 112 L.Ed.2d 772 (1991). Cf. United States v. Richardson, 599 F.2d 290 (9th Cir.1979), cert. denied, 444 U.S. 1014, 100 S.Ct. 663, 62 L.Ed.2d 643 (1980). In reaffirming the Forest Service's authority to regulate mining, the Doremus court rejected a miner's contention that conduct "reasonably incident[al]" to mining could not be so regulated. Doremus, 888 F.2d at 632.
 
 
 39
 In light of the broad language of Sec. 551's grant of authority, Sec. 478's clarification that activities of miners on national forest lands are subject to regulation under the statute, and this substantial body of case law, there can be no doubt that the Department of Agriculture possesses statutory authority to regulate activities related to mining--even in non-wilderness areas--in order to preserve the national forests. 16 U.S.C. Sec. 551.
 
 
 40
 As noted above, plaintiffs argue that because the permissibility of motor-vehicle access may affect whether a claim is deemed to be "valid," the issue of access is different from other matters that the Forest Service may permissibly regulate. Plaintiffs contend that means of access go to the validity of the claim and, as such, are committed to the jurisdiction of Interior. Rejecting this argument, the district court wrote:
 
 
 41
 I find that it is the nature of the issue presented (i.e. mode of access), not the effect of the determination which determines the appropriate agency forum. Thus, the fact that the Forest Service's rejection of a particular method of access may have a "material impact" on the mining claim activity does not transform the determination from one within the province of the Forest Service to one within the exclusive province of the Interior Department.
 
 
 42
 ER at 218 (emphasis in original). We concur in this conclusion. Virtually all forms of Forest Service regulation of mining claims--for instance, limiting the permissible methods of mining and prospecting in order to reduce incidental environmental damage--will result in increased operating costs, and thereby will affect claim validity, for the reasons explained above. See supra note 7. However, the above case law makes clear that such matters may be regulated by the Forest Service, and plaintiffs have offered no compelling reason for distinguishing means of access issues from other such forms of regulation.[9]
 
 
 43
 Plaintiffs also invoke the doctrine of "primary jurisdiction" as supporting their claim that the challenged Forest Services actions are unauthorized. The doctrine of primary jurisdiction holds that where it is evident that "Congress, in enacting a regulatory scheme, intends an administrative body to have the first word on issues" in a particular field, courts should abstain from adjudicating such issues when raised in cases before them, and instead should obtain an adjudication of the issue from the relevant administrative body in a manner similar to a federal court's certifying a question to a state court. United States v. General Dynamics Corp., 828 F.2d 1356, 1362 (9th Cir.1987). As an initial matter, we note that the doctrine is usually applied to determine whether a federal court may adjudicate an issue. In contrast, plaintiffs' contention here is that primary jurisdiction is vested in one federal agency--Interior--such that adjudication of related issues by another federal agency--Agriculture--is precluded. In any event, assuming that the doctrine can apply in such contexts, it is quite clear that it has no applicability here.
 
 
 44
 Whether such primary jurisdiction exists in a particular agency is a question of congressional intent, since Congress is free to allocate such authority as it chooses. See General Dynamics, 828 F.2d at 1363 n. 13 (noting "[t]he importance of ensuring Congressional intent to place the initial consideration of an issue with an agency before finding that judicial deferral is warranted"). Courts of this circuit have construed the Forest Service's Organic Act as evidencing a congressional intent to authorize the Service to regulate mining activities on national forest lands. See discussion supra. Thus, there can be no question of Agriculture's impinging on Interior's primary jurisdiction.[10]
 
 
 45
 For the above reasons, we affirm the district court's ruling that the Forest Service enjoys authority to regulate access to mining claims located within national forest lands, and hold that that authority extends both to national forest lands that have been designated wilderness areas and those that have not.
 
 
 46
 IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES WITH RESPECT TO
 
 THE WILSON CLAIM
 
 47
 The district court ruled that judicial review of the Forest Service's actions regarding the Wilson claim was not available on the ground that plaintiffs had failed to exhaust their administrative remedies with respect to that claim. Plaintiffs challenge that ruling on appeal.
 
 A. THE CHALLENGED FOREST SERVICE ACTIONS
 
 48
 Regarding the Wilson claim, plaintiffs object to the Forest Service's (1) failure to approve motorized access to the claim, and (2) failure to approve a plan of operations while plaintiffs' appeal of the BLM's ruling that the claim was not valid was pending in Interior. As recounted above, plaintiffs made three different filings with the Forest Service in their attempt to begin mineral exploration on the Wilson claim: a plan of operations, a revised plan of operations, and a notice of intent to file yet another plan of operations. On June 6, 1990, the BLM ruled the Wilson claim null and void. SER at 34. Plaintiffs appealed that ruling to the Interior Department Bureau of Land Appeals. SER at 37. However, at no point did plaintiffs attempt to appeal with the Forest Service the District Ranger's refusal to approve the two submitted plans of operations.
 
 B. EXHAUSTION REQUIREMENTS UNDER THE APA
 
 49
 As noted above, this lawsuit for review of the legality of federal agency action is brought by plaintiffs pursuant to the APA. See supra note 5. Under the APA, review is available where the challenged agency action is "final."[11] In addition, under the related but distinct doctrine of "exhaustion,"
 
 
 50
 an appeal to "superior agency authority" is a prerequisite to judicial review [under the APA] ... when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review.
 
 
 51
 Darby v. Cisneros, --- U.S. ----, ----, 113 S.Ct. 2539, 2548, 125 L.Ed.2d 113 (1993).
 
 
 52
 C. THE FOREST SERVICE ADMINISTRATIVE REGULATORY SCHEME
 
 
 53
 The Forest Service regulations governing the surface use of national forest lands in connection with operations on mining claims provide that, with certain exceptions, "a notice of intent to operate is required from any person proposing to conduct operations which might cause disturbance of surface resources." 36 C.F.R. Sec. 228.4(a). If the District Ranger determines that the proposed operations are likely to cause a "significant disturbance of surface resources," the operator must file a proposed plan of operations. Id. The District Ranger's decision to require a plan is not directly appealable, because it is not a decision relating to "issuance, denial, or administration of [particular] written instruments to occupy and use National Forest System lands." 36 C.F.R. Secs. 251.82 & 228.14. Rather, to challenge a decision requiring that a plan be filed, a person must first comply and file a plan. Decisions relating to approval of a plan may then be appealed. 36 C.F.R. Sec. 251.82(a)(4). The regulations specifically provide that it is the position of the Forest Service that, for decisions appealable under the regulations, exhaustion should be required before an aggrieved party may seek federal court review. 36 C.F.R. Sec. 251.101.
 
 D. ANALYSIS
 
 54
 The district court ruled that the District Ranger's response to plaintiffs' 1990 notice of intent to file a plan of operations was not a final order under the regulations and therefore was not appealable under the APA. ER at 158. This holding appears correct, see Franklin v. Massachusetts, --- U.S. ----, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992), and plaintiffs have not challenged it on appeal. As for the District Ranger's refusal to act on the actual proposed plans of operations submitted by plaintiffs in 1988 and 1989, the district court ruled that that action--or inaction--was not reviewable on the ground that plaintiffs had failed to exhaust their administrative remedies regarding it. ER at 157.
 
 
 55
 The court's conclusion that the District Ranger's failure to act was appealable under the Forest Service regulations appears correct,[12] and the parties do not contest it. As noted above, that Forest Service regulations require exhaustion for those Service rulings that are appealable under the regulations. 36 C.F.R. Sec. 251.101. Thus, under Darby, there is an exhaustion requirement that plaintiffs have not satisfied. See Doremus, 888 F.2d at 632 (exhaustion required in order to obtain judicial review under APA of Forest Service action on plan of operations).
 
 
 56
 Recognizing this, plaintiffs sought to avoid dismissal by arguing that the so-called "futility" exception to the exhaustion requirement applies in this case. BB at 42-45; GB at 20. Cases in this circuit such as El Rescate Legal Serv. v. EOIR, 959 F.2d 742 (9th Cir.1992), have held that
 
 
 57
 there is no requirement of exhaustion where resort to the agency would be futile. SAIF Corp./Oregon Ship v. Johnson, 908 F.2d 1434, 1441 (9th Cir.1990).... [W]here the agency's position on the question at issue "appears already set," and it is "very likely" what the result of recourse to administrative remedies would be, such recourse would be futile and is not required. Id.
 
 
 58
 El Rescate, 959 F.2d at 747. Plaintiffs argue that, with respect to the Wilson claim, it would have been futile for them to pursue an administrative appeal challenging the Forest Service's policy of not approving plans of operations until claim validity is ascertained by Interior. They argue that the fact that the Forest Service had already expressed an agency position on this issue in the Forest Service's ruling denying plaintiffs' appeal in the case of the Robert E. claims showed that appealing the District Ranger's refusal to act on the Wilson claim plan of operations would have been a futile gesture. BB at 42-45.
 
 
 59
 We concur in the district court's conclusion that the futility exception to the exhaustion requirement does not apply in this case on these facts. In its ruling denying plaintiffs' administrative appeal in the Robert E. case, the Forest Service cited as authority for its decision an administrative rule published in the Forest Service Manual that provides that the Forest Service will not approve a plan of operations for claims located in federal wilderness areas until it determines the claim at issue is valid. See Forest Service Manual Sec. 2816. However, as discussed above, the Wilson claim, although located in a national forest, is not in a wilderness area. Thus, the rule and reasoning on which the Forest Service relied in its ruling on the Robert E. case are clearly of no applicability in the case of the Wilson claim. As such, the Service's ruling in the Robert E. case does not demonstrate that the "agency's position on the question at issue 'appears already set' " as is required for the futility exception to apply. We thus affirm the district court's dismissal of plaintiffs' claims involving the Wilson claim for failure to exhaust.
 
 
 60
 V. SUBSTANTIVE VALIDITY OF THE FOREST SERVICE'S DECISIONS
 
 UNDER THE APA
 
 61
 In addition to challenging the Forest Service's authority to regulate access to mining claims, plaintiffs challenge the Service's particular rulings and actions on the merits, charging that they are otherwise illegal. The district court rejected all of these arguments, and plaintiffs challenge those rulings on appeal. As we have affirmed the district court's dismissal of plaintiff's claims regarding the Wilson claim for failure to exhaust, remaining before us is only the legality of the Service's actions with respect to the Robert E. and Thunderbolt claims, both of which are located on national forest wilderness lands.
 
 
 62
 As explained above, see supra note 5, aside from their constitutional claims which are discussed later, plaintiffs' claims must be construed as having been asserted under the APA. We shall therefore treat plaintiffs' arguments as being asserted under the APA, although plaintiffs sometimes have not framed them this way in their pleadings.
 
 
 63
 A. THE ROBERT E. CLAIM: FOREST SERVICE RULING REFUSING TO APPROVE MOTORIZED ACCESS PENDING FINAL DETERMINATION OF CLAIM VALIDITY BY THE DEPARTMENT OF THE INTERIOR
 
 1. FOREST SERVICE RULING
 
 64
 As explained above, in approving a plan of operations for the Robert E. claim, the Forest Service modified the plan so as to prohibit use of motorized transport to access the claim during the period while the claim's validity was being evaluated by the Department of the Interior. SER at 56-57. That ruling was affirmed on appeal by the Forest Service. SER at 58-61.
 
 
 65
 2. ANALYSIS OF GROUNDS ON WHICH PLAINTIFFS CHALLENGE FOREST SERVICE RULING
 
 
 66
 In the district court, and again on appeal, plaintiffs challenge this ruling, alleging that it violated Interior Department regulations and the Forest Service's own regulations. Charging that these regulations require the Forest Service to apply the same motorized access standard to all mining claims unless and until they are held invalid by Interior, plaintiffs contend that the Service has "unlawfully withheld or unreasonably delayed" such action, in violation of Sec. 706(1) of the APA.
 
 
 67
 As noted earlier, the challenged rulings regarding motorized access are made pursuant to authority conferred on the Agriculture Department under 16 U.S.C. Sec. 1134(b), which provides that
 
 
 68
 In any case where valid mining claims or other valid occupancies are wholly within a designated national forest wilderness area, the Secretary of Agriculture shall, by reasonable regulations consistent with the preservation of the area as wilderness, permit ingress and egress to such surrounded areas by means which have been or are being customarily enjoyed with respect to other such areas similarly situated.
 
 
 69
 (Emphasis added). Exercising that authority, Agriculture has promulgated regulations that provide, in pertinent part
 
 
 70
 (b) Holders of unpatented mining claims validly established on any National Forest Wilderness prior to inclusion of such unit in the National Wilderness Preservation System shall be accorded the rights provided by the United States mining laws as then applicable to the National Forest land involved.... Persons conducting operations as defined in Sec. 228.3 in National Forest Wilderness shall comply with the regulations in this part. Operations shall be conducted so as to protect National Forest surface resources in accordance with the general purpose of maintaining the National Wilderness Preservation System unimpaired for future use and enjoyment as wilderness and to preserve its wilderness character, consistent with the use of the land for mineral location, exploration, development, drilling, and production ..., including, where essential, the use of mechanized transport, aircraft or motorized equipment.
 
 
 71
 (c) Persons with valid mining claims wholly within National Forest Wilderness shall be permitted access to such surrounded claims by means consistent with the preservation of National Forest Wilderness which have been or are being customarily used with respect to other such claims surrounded by National Forest Wilderness. No operator shall construct roads across National Forest Wilderness unless authorized in writing by the Forest Supervisor in accordance with Sec. 228.12.
 
 
 72
 36 C.F.R. Sec. 228.15 (emphasis added). The Forest Service construes the references to "validity" contained in the statute and in the agency's own implementing regulations as meaning that the access referred to need only be granted if and when it is determined that the claim in question is, in fact, "valid." See Forest Service Manual Sec. 2816.
 
 
 73
 Plaintiffs argue that this interpretation runs counter to Interior Department regulations and to the Forest Service's own regulations. Plaintiffs cite 43 C.F.R. Sec. 4.21(a), a regulation establishing certain procedures applicable in Interior Department administrative proceedings. It provides
 
 
 74
 Effect of decision pending appeal.
 
 
 75
 Except as otherwise provided by law or other pertinent regulation, a decision will not be effective during the time in which a person adversely affected may file a notice of appeal, and the timely filing of a notice of appeal will suspend the effect of the decision appealed from pending the decision on appeal. ....
 
 
 76
 43 C.F.R. Sec. 4.21(a) (1992).[13] Plaintiffs argue that this regulation requires the Forest Service to hold off on treating any claim as invalid unless and until an Interior Department ruling of invalidity has been affirmed after administrative appeal. The district court rejected this argument, reasoning that
 
 
 77
 Plaintiffs have misconstrued the meaning of this regulation. Section 4.21 sets forth general rules concerning the appeals process within the Interior Department. Plaintiffs present no authority to establish that, under Sec. 4.21(a), the effect of a decision of the Department of Agriculture is stayed by the initiation of contest proceedings before the Interior Department. In the absence of decisional or statutory law, I cannot interpret a government regulation in a manner inconsistent with its shared objective.
 
 
 78
 ER at 167.
 
 
 79
 We concur in this conclusion. The Interior department regulation does not purport to instruct other agencies such as Agriculture about how to treat putative mining claims during the pendency of appeals in validity proceedings. Moreover, even if the regulation did purport to do so, plaintiffs have cited no authority for the proposition that one agency may promulgate regulations that bind another agency in that way. The issue here concerns how an agency should treat a putative claim during the interim while validity is being assessed. Interior has taken one position, Agriculture another, and we see no reason why such a divergence is impermissible as a matter of law.
 
 
 80
 Plaintiffs further argue that the policy of refusing to approve motorized access while validity proceedings are pending runs contrary to the Forest Service's own regulations codified at 36 C.F.R. Sec. 228.5(a).[14] Plaintiffs apparently construe the Forest Service refusal to approve motorized claim access until validity is established as a policy whereby plans of operations proposing motorized access are not acted on while validity is being investigated. This, they reason, violates Forest Service regulations regarding timely processing of plans of operations. However, this argument is predicated on a faulty assumption. As the record in the Robert E. case demonstrates, the Forest Service did rule in a timely fashion on the proposed plan of operation. The Forest Service, wielding its authority under 36 C.F.R. Sec. 228.5(a)(3), approved the plan subject to certain modifications, among these being that only non-motorized access would be permitted while validity is pending. See SER at 56. Thus, the challenged policy is not inconsistent with these procedural provisions.
 
 
 81
 Finally, plaintiffs argue that the policy of refusing to approve motorized access while validity proceedings are pending violates plaintiffs' property rights in the mining claim. Plaintiffs cite cases including United States v. Barrows, 404 F.2d 749 (9th Cir.1968), cert. denied, 394 U.S. 974, 89 S.Ct. 1468, 22 L.Ed.2d 754 (1969), for the proposition that
 
 
 82
 [the miner's] right to the claim, unless and until the claim is finally declared void, is a property right.
 
 
 83
 Id. at 752 (citing Adams v. Witmer, 271 F.2d 29, 33 (9th Cir.1958)). However, insofar as plaintiffs mean to argue that the Forest Service's policy infringes their property right in the claim without due process in violation of the Fifth Amendment, that issue is addressed below. Similarly, if plaintiffs mean to assert that they have had this property interest abridged in violation of the takings clause of the Fifth Amendment, that argument too is addressed below.[15]
 
 
 84
 As plaintiffs have not called to the court's attention any statute that would prohibit the challenged policy, we affirm the district court's entry of summary judgment for defendants on plaintiffs' claim that the policy amounted to "unlawfully withheld or unreasonably delayed" agency action, in violation of Sec. 706(1) of the APA. We hold that the Forest Service policy of refusing to approve motorized access to claims located in national forest wilderness lands, unless and until claim validity is established, is consistent with the governing statutes and agency regulations and thus is valid and enforceable.
 
 
 85
 B. THE THUNDERBOLT CLAIM: FOREST SERVICE RULING DENYING MOTORIZED ACCESS
 
 
 86
 1. BACKGROUND: THE FOREST SERVICE ACCESS REGULATIONS
 
 
 87
 As noted above, Forest Service regulations provide that miners should be permitted access to claims that are surrounded by national forest wilderness lands "by means consistent with the preservation of National Forest Wilderness which have been or are being customarily used with respect to other such claims," 36 C.F.R. Sec. 228.15(c) (emphasis added), and that "the use of mechanized transport ... or motorized equipment" need not be permitted unless "essential " to mining activities. 36 C.F.R. Sec. 228.15(b) (emphasis added). As these regulations draw their operative language nearly verbatim from the statute, there can be no question that the regulations are a valid exercise of the agency's delegated rulemaking authority. However, plaintiffs challenge on other grounds the validity of the Forest Service's application of these regulations in the case of the Thunderbolt claim.
 
 2. FOREST SERVICE RULINGS
 
 88
 In its 1989 ruling on plaintiffs' appeal of its denial of permission for motorized access to the Thunderbolt claim, the Forest Service found (1) that the trails that plaintiffs proposed to use for motorized access to the claim had not been used by motor vehicles since the area was designated a wilderness area in 1984, ER at 84; and (2) that the scope of the proposed operation was relatively small, and that consequently the volume of material and equipment that would need to be transported to the claim was not great. ER at 85. On the basis of these findings, the Service concluded that motorized access was not "essential" for the operation of the claim under 36 C.F.R. Sec. 228.15(b), and therefore reaffirmed its earlier denial. ER at 85. In the second 1990 appeal of the same ruling, the Forest Service further found that the scope of the proposed operation was relatively small, and that the equipment that plaintiffs proposed using--a five-inch suction dredge--was sufficiently small in size that it could be transported using pack horses. (A five-inch dredge had been carried in by pack horse when the claim was examined by the Forest Service to assess its validity.) On the basis of this finding, the Service concluded that motorized access was not being "customarily used with respect to other such claims," and that therefore motorized access need not be granted under 36 C.F.R. Sec. 228.15. ER at 97.
 
 
 89
 Plaintiffs also argued that the existing trails that they proposed to expand and then use to gain motorized access to the claim were public right-of-ways under Revised Statutes ("R.S.") Sec. 2477. On this basis, they contended that the Forest Service could not preclude them from using the trails to gain motorized access to their claim and that, moreover, they were exempted from having to obtain Forest Service approval of their plan to use the trails under 36 C.F.R. Sec. 228.4(a), which states:
 
 
 90
 The requirements to submit a plan of operations shall not apply:
 
 
 91
 (i) To operations which will be limited to the use of vehicles on existing public roads or roads used and maintained for National Forest purposes.
 
 
 92
 In its 1989 ruling on the first appeal, the Forest Service rejected this argument on the ground that the trails in question did not qualify as public highways under the legal standard applied under R.S. Sec. 2477. ER at 84. In its 1990 ruling on the second appeal, the Service also ruled that, in any event, the 36 C.F.R. Sec. 228.4(a) exemption from the requirement to submit a plan of operations did not apply because plaintiffs' proposed mining plan was not limited to existing roads, but rather would involve clearing trails that had not been used for ten years to restore them to a state in which motor vehicles could travel them. ER at 96.
 
 
 93
 3. ANALYSIS OF GROUNDS ON WHICH PLAINTIFFS CHALLENGE FOREST SERVICE RULINGS
 
 
 94
 Plaintiffs challenge the above rulings on various grounds. First, they challenge the fact-finding on the basis of which the Service concluded that motorized access was neither "essential" to the operation of the claim under 36 C.F.R. Sec. 228.15(b), nor "customarily used with respect to other such claims" under 36 C.F.R. Sec. 228.15(c). However, federal court review of agency fact-finding--other than fact-finding made in the course of formal adjudications which the instant proceedings are not--is conducted under the deferential "arbitrary and capricious" standard, pursuant to 706(2)(A) of the APA. Mt. Graham Red Squirrel v. Espy, 986 F.2d 1568, 1571 (9th Cir.1993); II Davis & Pierce, Administrative Law Treatise Sec. 11.4 (3d ed. 1994). Under this deferential mode of review, the court is
 
 
 95
 called upon to determine only whether the [agency's] decisions ... were "based on a consideration of the relevant factors" and did not betray "clear errors in judgment." Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 378[, 109 S.Ct. 1851, 1861, 104 L.Ed.2d 377] (1989). Review under this standard is to be "searching and careful," but remains "narrow," and a court is not to substitute its judgment for that of the agency. Id.
 
 
 96
 Mt. Graham, 986 F.2d at 1571. As explained above, the Forest Service concluded, based on the fact that the Service's own examiner had carried in a five-inch dredge by pack horse when evaluating the claim, and the fact that the operation proposed was a small one for which plaintiffs also planned to use a five-inch dredge, that motorized access was not "essential" to the mining operation under 36 C.F.R. Sec. 228.15(b). Regarding the "customarily used" standard of 36 C.F.R. Sec. 228.15(c), the record also shows that the access trails plaintiffs proposed using have been blocked by a gate and closed to traffic since 1984. Since that date the trails have not been maintained by the Forest Service, and consequently they are returning to a natural condition. See ER at 172-73.
 
 
 97
 Moreover, plaintiffs have pointed to no evidence in the administrative record that would tend to show motorized access is, in fact, "essential" to the operation of this claim or is "customarily used with respect to other such claims." In the absence of such record evidence, there can be no question but that the challenged agency ruling holding that motorized access is not required under 36 C.F.R. Sec. 228.15 is not arbitrary and capricious in violation of Sec. 706(2)(A) of the APA.
 
 
 98
 Plaintiffs also argued in the district court that the Forest Service acted improperly in ruling that the trails in question do not qualify as public highways under R.S. Sec. 2477. Plaintiffs assert that authority to decide whether roads qualify as public highways under R.S. Sec. 2477 is vested in the Department of the Interior. The district court rejected that contention, ruling the Forest Service may properly rule on such issues in the course of carrying out its duty to review and approve plans of operations. ER at 170. Plaintiffs raise this argument again on appeal, charging that the Forest Service improperly ruled on this issue which might otherwise afford them a legal basis for circumventing the Service's ban on motorized access.
 
 
 99
 We interpret this argument as a claim that the Forest Service's ruling regarding the Thunderbolt claim was "in excess of statutory jurisdiction, authority, or limitations," in violation of Sec. 706(2)(C) of the APA. We reject this claim on the ground urged by the government in its brief on appeal: that regardless whether the trails in question are public highways under R.S. Sec. 2477, they are nonetheless subject to the Forest Service regulation. This court held in United States v. Vogler, 859 F.2d 638 (9th Cir.1988), cert. denied, 488 U.S. 1006, 109 S.Ct. 787, 102 L.Ed.2d 779 (1989), that the statutory authority conferred on the National Park Service under 16 U.S.C. Sec. 1 to regulate national parks empowers the Park Service to regulate the use of R.S. Sec. 2477 roads that are located within park areas. 859 F.2d at 642. As 16 U.S.C. Sec. 551 confers on the Department of Agriculture similar authority to regulate national forest areas, Vogler indicates that encompassed within that grant is the authority to regulate use of R.S. Sec. 2477 roads where such is necessary to carry out Agriculture's statutory duty to protect national forests against "depredations."
 
 
 100
 Finally, plaintiffs challenge the Forest Service ruling as violating certain provisions of the mining laws. We interpret this argument as a claim that the ruling was "in excess of statutory jurisdiction, authority, or limitations," in violation of Sec. 706(2)(C) of the APA, or else "not in accordance with law," in violation of Sec. 706(2)(A) of the APA. Plaintiffs cite 30 U.S.C. Sec. 612(b), which provides, in pertinent part
 
 
 101
 Rights under any mining claim ... shall be subject, prior to issuance of patent therefor, to the right of the United States to manage and dispose of the vegetative surface resources thereof and to manage other surface resources thereof.... Any such mining claim shall also be subject, prior to issuance of patent therefor, to the right of the United States, its permittees, and licensees, to use so much of the surface thereof as may be necessary for such purposes or for access to adjacent land: Provided, however, That any use of the surface or any such mining claim by the United States, its permittees or licensees, shall be such as not to endanger or materially interfere with prospecting, mining or processing operations or uses reasonably incidental thereto....
 
 
 102
 (Emphasis added). Plaintiffs argue that motorized access to the claim is "[a] use[ ] reasonably incidental [to mining]" and that the Service's ruling "materially interfere[s] with" that use in violation of this provision. Plaintiffs' position seems to be that Forest Service actions regulating access to claims located within national forest lands must comply not only with the "means ... customarily enjoyed" standard of 16 U.S.C. Sec. 1134(b) and 36 C.F.R. Sec. 228.15(c), and the "where essential" standard of 36 C.F.R. Sec. 228.15(b), but also with the "materially interfere" standard of 30 U.S.C. Sec. 612.
 
 
 103
 It is true our circuit has held that Forest Service regulation of activities on mining claims must comport with the standard set out in 30 U.S.C. Sec. 612. See United States v. Doremus, 888 F.2d 630, 633 (9th Cir.1989) (upholding Forest Service requirement that claim holders obtain permit before beginning operations on grounds that such Forest Service regulation did not "materially interfere" with mining operation), cert. denied, 498 U.S. 1046, 111 S.Ct. 751, 112 L.Ed.2d 772 (1991). However, by its terms, 30 U.S.C. Sec. 612 addresses only "use of the surface of any ... mining claim by the United States" (emphasis added). We see no basis for construing the statute as limiting Forest Service regulation of activities on national forest lands outside of the boundaries of the mining claim, particularly in view of the fact that Congress subsequently enacted a statute specifically addressing that issue--16 U.S.C. Sec. 1134(b). We therefore affirm the district court's rejection of this argument on the ground that the "materially interfere" standard of 30 U.S.C. Sec. 612 does not apply to actions taken by the government to regulate mining-related activities that occur on national forest lands outside of the boundary of the mining claim.
 
 VI. TAKINGS CLAIM
 
 104
 Plaintiffs also argue the Forest Service's denial of motorized access to their claims effects a taking of private property for public use without just compensation in violation of the Takings Clause of the Fifth Amendment. The district court concluded that the takings claim failed because it was not ripe and because, even if it were, subject matter jurisdiction over it would likely lie in the U.S. Court of Federal Claims.
 
 
 105
 Plaintiffs argue that the district court erred in ruling that jurisdiction over their takings claim lies exclusively in the Court of Claims. 28 U.S.C. Sec. 1346(a)(2),[16] the "Little" Tucker Act, vests the district courts with jurisdiction to hear suits alleging constitutional claims against the United States so long as the plaintiff does not seek damages in excess of $10,000. Plaintiffs contend that since they seek only injunctive and declaratory relief in this action, jurisdiction over their takings claim may properly lie in the district court.
 
 The Supreme Court has instructed that
 
 106
 Equitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the sovereign subsequent to the taking. Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 697 n. 18[, 69 S.Ct. 1457, 1465 n. 18, 93 L.Ed. 1628] (1949). The Fifth Amendment does not require that compensation precede the taking. Hurley v. Kincaid, 285 U.S. 95, 104[, 52 S.Ct. 267, 269, 76 L.Ed. 637] (1932). Generally, an individual claiming that the United States has taken his property can seek just compensation under the Tucker Act, 28 U.S.C. Sec. 1491. United States v. Causby, 328 U.S. 256, 267[, 66 S.Ct. 1062, 1068, 90 L.Ed. 1206] (1946) ("If there is a taking, the claim is 'founded upon the Constitution' within the jurisdiction of the Court of Claims to hear and determine"); Yearsley v. Ross Construction Co., 309 U.S. 18, 21[, 60 S.Ct. 413, 414, 84 L.Ed. 554] (1940).
 
 
 107
 Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1016-17, 104 S.Ct. 2862, 2879-80, 81 L.Ed.2d 815 (1984). Ruckelshaus thus held that a suit for equitable relief to enjoin a taking cannot be maintained where a post-deprivation suit for damages would be available. Ruckelshaus further held that where an action alleged to be a taking is carried out by the government pursuant to statutory authority, a suit for money damages may be maintained under the Tucker Act unless the statute in question evidences a congressional intent to "withdraw[ ] the Tucker Act grant of jurisdiction to the Court of Claims to hear a [takings] suit involving the [statute]." 467 U.S. at 1017, 104 S.Ct. at 2880 (quoting Regional Rail Reorganization Act Cases, 419 U.S. 102, 126, 95 S.Ct. 335, 349, 42 L.Ed.2d 320 (1974) (emphasis in original)). Here, it does not appear, nor have plaintiffs argued, that 16 U.S.C. Sec. 1134(b) or the other statutes pursuant to which the Forest Service has acted evince such a congressional intent to preclude a Tucker Act remedy. In view of that fact, plaintiffs may not maintain a suit for equitable relief, but rather are limited to the exclusive remedy of a suit for money damages under the Tucker Act.
 
 
 108
 Because plaintiffs seek only injunctive and declaratory relief on their takings claim, its dismissal was therefore appropriate. Moreover, even if plaintiffs had sought leave to amend to add a prayer for money damages, jurisdiction over such an amended claim would lie exclusively in the Court of Claims. The "Little" Tucker Act vests the district courts with jurisdiction over suits against the federal government only where plaintiffs seek less than $10,000 in damages. See 28 U.S.C. Sec. 1346(a)(2). Since plaintiffs in their complaint allege damages in excess of $10,000, see ER at 17, they are disqualified from suing in the district court.
 
 
 109
 We therefore affirm the district court's dismissal of plaintiff's takings claim on the ground that the district court had no jurisdiction to hear the claim under the Little Tucker Act. As this ground is a wholly adequate basis on which to affirm the district court's dismissal of this claim, it is not necessary for us to address the ripeness ground on which the district court relied as an additional basis for its dismissal.
 
 VII. PROCEDURAL DUE PROCESS CLAIMS
 
 110
 Plaintiffs also argue that because they were accorded no hearing before the Forest Service issued its rulings refusing to approve motorized access to the claims, their due process rights were violated. The magistrate's findings and recommendations and the district court opinion do not expressly address this claim. However, as it is clear that the claim fails as a matter of law, we may nonetheless affirm the district court's entry of summary judgment for defendants on this claim.
 
 
 111
 The Due Process Clause of the Fifth Amendment forbids the federal government from depriving persons of "life, liberty, or property, without due process of law." Since life and liberty are not at issue in this case, a threshold question relevant to whether plaintiffs can state a due process claim is whether they have been denied a property interest. "An interest must have its source in positive law--state common law, a statute, or a contract--in order to be characterized as 'property' for due process purposes." II Davis & Pierce, Administrative Law Treatise Sec. 9.4, at 27. Thus, in the present context, plaintiffs must have been denied a statutorily conferred "property interest" in order for this threshold requirement to be met.
 
 
 112
 We have concluded above that 30 U.S.C. Sec. 612 does not vest claim holders with a property right to any particular type of access to their claims across national forest wilderness lands surrounding their claims. The only laws imposing substantive standards in this area are 16 U.S.C. Sec. 1314(b) and the Forest Service regulations implementing that statute. Thus, only if those laws confer a property right to motorized access can plaintiffs possibly state a due process claim.
 
 
 113
 It is not necessary for us to resolve this question in order to affirm entry of summary judgment for defendants on this claim. This is the case because, even if plaintiffs had a constitutionally protected property interest in having the statutory access standard fairly and accurately applied, it seems sufficiently clear that the procedural protections provided by the Forest Service would satisfy constitutional requirements for such proceedings.
 
 
 114
 The specific aspects of the Forest Service procedures that plaintiffs object to are (1) the Service's failure to provide an evidentiary hearing at the initial decision stage, requiring instead that pleadings and evidence be submitted in written form; (2) the alleged inadequacy of the Forest Service's explanation of the reasons for its rulings; and (3) the Service's failure to provide for an evidentiary hearing at the administrative appeal stage. BB at 38-39. The complaint regarding the reasons offered by the Forest Service for its decisions surely has no merit, for the Service's administrative rulings on plaintiffs' administrative appeals offered detailed explanations and cited specific statutes and regulations as authority. As to the complaint regarding the Service's failure to provide evidentiary hearings, plaintiffs cite Pence v. Andrus, 586 F.2d 733 (9th Cir.1978), for the proposition that evidentiary hearings are required by due process. However, Pence, which addressed the due process requirements for BLM administrative proceedings adjudicating Native Alaskan land rights, held that informal oral evidentiary hearings were required in such cases only because many of the claimants involved were poorly educated, unsophisticated persons who would not be able to comply with complicated formal pleading requirements. Id. at 741. As here there is no record evidence showing, nor reason to believe, that holders of mining claims are similarly unable to pursue their claims by filing written pleadings, Pence is inapposite.
 
 
 115
 Because plaintiffs have cited no authority showing that the Forest Service's detailed administrative procedures--which include provisions for administrative appellate review of agency decisions, see 36 C.F.R. Secs. 251.80-251.101--do not conform with procedural due process requirements, we affirm the district court's grant of summary judgment for defendants on this claim.
 
 VIII. CONCLUSION
 
 116
 For the foregoing reasons, the district court's decision granting summary judgment for defendants on all counts, and denying summary judgment for plaintiffs is AFFIRMED.
 
 
 
 *
 Honorable Thelton E. Henderson, Chief Judge, U.S. District Court for the Northern District of California, sitting by designation
 
 
 [1]
 The Mining Act of 1872, 30 U.S.C. Sec. 22, provides, in pertinent part, that
 Except as otherwise provided, all valuable mineral deposits in lands belonging to the United States ... shall be free and open to exploration and purchase....
 Construing this provision, the Supreme Court has held, however, that
 This section is not as comprehensive as its words separately considered suggest.... [I]t is apparent that, while embracing only lands owned by the United States, it does not embrace all that are so owned.... Only where the United States has indicated that the lands are held for disposal under the land laws does the section apply; and it never applies where the United States directs that the disposal be only under other laws.
 Oklahoma v. Texas, 258 U.S. 574, 599-600, 42 S.Ct. 406, 415-16, 66 L.Ed. 771 (1922). See Brown v. U.S. Dep't of the Interior, 679 F.2d 747, 750-51 (8th Cir.1982).
 
 
 [2]
 An "unpatented" claim is a possessory interest in a particular area solely for the purpose of mining; it may be contested by the government or a private party. By contrast, if a claim is patented, the claimant gets a fee simple interest from the United States and no contest can be brought against the claim. See Northern Alaska Envtl. Ctr. v. Lujan, 872 F.2d 901, 904 n. 2 (9th Cir.1989)
 
 
 [3]
 The following abbreviations are used through this opinion:
 BB = Blue Brief (plaintiffs' initial brief)
 RB = Red Brief (the government's opposition brief)
 GB = Gray Brief (plaintiffs' reply brief)
 ER = Excerpts of Record
 ER = Supplemental Excerpts of Record
 
 
 [4]
 Mining claims located on withdrawn lands are invalid. See United States v. Consolidated Mines & Smelting Co., 455 F.2d 432, 444 (9th Cir.1971)
 
 
 [5]
 In this case, plaintiffs challenge the Forest Service's actions on numerous grounds. Among these are two claims--challenges to arbitrary and capricious agency action and to wrongly withheld agency action--that plaintiffs describe as being asserted under the Administrative Procedure Act, 5 U.S.C. Secs. 701-706. See BB at 31-34. However, it is equally the case that plaintiffs' other arguments against the challenged actions--that they were taken without statutory authority, or that they violate statutory standards--should also be regarded and treated as claims under the APA. This is because the APA is a framework statute that provides the generally applicable means for obtaining judicial review of actions taken by federal agencies. Generally, except where a party challenges an agency action as violating a federal law--be it a statute, regulation, or constitutional provision--that has been interpreted as conferring a private right of action, or where a particular regulatory scheme contains a specialized provision for obtaining judicial review of agency actions under the scheme, review under a framework statute such as the APA is the sole means for testing the legality of federal agency action. See Lujan v. National Wildlife Federation, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); Sierra Club v. Penfold, 857 F.2d 1307, 1315 (9th Cir.1988)
 Of the laws that plaintiffs charge the challenged Forest Service decisions violate, only the constitutional provisions confer private rights of action such that parties may sue directly under them and need not proceed under the APA for those claims. See Broughton Lumber Co. v. Yeutter, 939 F.2d 1547, 1556 (Fed.Cir.1991) (takings clause of U.S. Constitution is self-executing). All of plaintiffs' other claims must be brought under the APA.
 The APA instructs:
 The reviewing court shall--
 (1) compel agency action unlawfully withheld or unreasonably delayed; and
 (2) hold unlawful and set aside agency action, findings, and conclusions found to be--
 (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
 (B) contrary to constitutional rights, power, privilege, or immunity;
 (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
 (D) without observance of procedure required by law....
 5 U.S.C. Sec. 706. Thus, the instant claim challenging the Forest Service rulings as issued without statutory authority should be construed as a claim challenging agency action "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" under 5 U.S.C. Sec. 706(2)(C).
 
 
 [6]
 "A mining claimant has the right to possession of a claim only if he has made a mineral discovery on the claim." Lara v. Secretary of Interior, 820 F.2d 1535, 1537 (9th Cir.1987). A "discovery" is defined as having occurred in circumstances
 Where minerals have been found and the evidence is of such a character that a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine....
 Chrisman v. Miller, 197 U.S. 313, 322, 25 S.Ct. 468, 470, 49 L.Ed. 770 (1905), quoted in Lara, 820 F.2d at 1541. The Supreme Court subsequently refined this prudent person test, holding that "profitability is an important consideration in applying the prudent-[person] test." United States v. Coleman, 390 U.S. 599, 602, 88 S.Ct. 1327, 1330, 20 L.Ed.2d 170 (1968), quoted in Lara, 820 F.2d at 1541. Thus, the profitability of a putative claim can affect whether the claim is found to be valid.
 
 
 [7]
 The Secretary of Agriculture shall make provisions for the protection against destruction by fire and depredations upon the public forests and national forests which may have been set aside or which may be hereafter set aside ... and he may make such rules and regulations and establish such service as will insure the objects of such reservations, namely, to regulate their occupancy and use and to preserve the forests thereon from destruction
 16 U.S.C. Sec. 551.
 
 
 [8]
 Nothing in section[ ] ... 551 of this title shall be construed as prohibiting ... any person from entering upon such national forests for all proper and lawful purposes, including that of prospecting, locating, and developing the mineral resources thereof. Such persons must comply with the rules and regulations covering such national forests
 16 U.S.C. Sec. 478 (emphasis added).
 
 
 [9]
 This conclusion is supported by the only case addressing a similar issue cited by the parties. That case, United States v. Fuller, No. CIV-S-83-850-LKK, (E.D.Cal. Aug. 28, 1987) (Karlton, J.), ER at 175, concerned a cabin that holders of a mining claim located within a national forest wilderness area had built in connection with their claim. Acting pursuant to its regulations issued under 16 U.S.C. Sec. 551, the Forest Service had ordered the claim holders to remove the cabin. The claim holders argued that the Forest Service's regulations and the challenged action impinged on the Interior Department's zone of regulatory authority regarding mining claims, and therefore were invalid
 The Fuller court rejected this contention, finding that the challenged regulations
 are wholly consistent with the statutory authority of the Secretary of Agriculture, and so long as their application does not result in a declaration of the validity or invalidity of a mining claim, they do not usurp upon the powers delegated to the Secretary of the Interior.
 Fuller, slip op. at 23-24, ER at 197-98. Fuller is thus authority for the proposition that, where there exists statutory authority for them to do so, agencies other than Interior may regulate matters related to mining activities so long as they do not purport to adjudicate the validity of mining claims, since that is a matter over which adjudicative authority is clearly vested in Interior.
 
 
 [10]
 Plaintiffs also argue that Interior's procedural rules applicable to agency decisions relating to mining claims are superior to Agriculture's in various respects. BB at 19-21. While this may well be true, it clearly has no bearing on whether Congress has authorized Agriculture to regulate ingress and egress to mining claims located on national forest wilderness lands
 
 
 [11]
 The APA permits review of either (1) "final agency action" or (2) other types of agency action that Congress has specified by statute are judicially reviewable. 5 U.S.C. Sec. 704. However, here there is no contention that any such special, express statutory authorization exists. Thus, APA review is available in this case only if the agency actions in question are "final."
 
 
 [12]
 The District Ranger's refusal to act on plaintiffs' proposed plans of operations appears to qualify as a
 written decision[ ] of [a] Forest Service line officer[ ] related to issuance, denial, or administration of [certain] written instruments to occupy and use National Forest System lands,
 
 
 [36]
 C.F.R. Sec. 251.82(a), which are defined as including,
 Approval/non-approval of Surface Use Plans of Operations related to the authorized use and occupancy of a particular site or area.
 
 
 [36]
 C.F.R. Sec. 251.82(a)(11). Such rulings are appealable under the Forest Service regulations
 
 
 [13]
 On January 19, 1993, while the instant litigation was pending, the Interior Department abandoned this policy of granting automatic stays of decisions pending administrative appeal. Under an amended regulation issued on that date, such stays must instead be applied for and may be granted or denied in the discretion of the agency. See 43 C.F.R. Sec. 4.21(a) (1993). Since it was the earlier version of the regulation that was in force at the time of the administrative actions challenged in this lawsuit, we review those actions' legality under the former rule
 
 
 [14]
 Operations shall be conducted in accordance with an approved plan of operations, except as provided in paragraph (b) of this section and in Sec. 228.4(a), (b), and (e). A proposed plan of operation shall be submitted to the District Ranger, who shall promptly acknowledge receipt thereof to the operator. The authorized officer shall, within thirty (30) days of such receipt, analyze the proposal, considering the economics of the operation along with the other factors in determining the reasonableness of the requirements for surface resource protection, and;
 (1) Notify the operator that he has approved the plan of operations; or
 (2) Notify the operator that the proposed operations are such as not to require an operating plan; or
 (3) Notify the operator of any changes in, or additions to, the plan of operations deemed necessary to meet the purpose of the regulations in this part; or
 (4) Notify the operator that the plan is being reviewed, but that more time, not to exceed an additional sixty (60) days, is necessary to complete such review, setting forth the reasons why additional time is needed ...
 
 
 [36]
 C.F.R. Sec. 228.5(a)
 
 
 [15]
 We note that the case on which plaintiffs chiefly rely, Barrows, contained a critical qualification to the above-quoted language:
 It must be remembered, however, that the Government is the underlying property owner and, as such, has interests entitled to protection. Balancing the interests of each, we think the court had power to prevent defendants from causing irreparable damage to the land, pending determination of the validity of defendants' claim. We find nothing in the record which convinces us that the district court abused this power in granting the temporary injunction.
 Barrows, 404 F.2d at 752. In Barrows, the district court had issued a preliminary injunction restraining the miner from damaging the surface lands and property of a putative claim located in a national forest pending administrative determination of the claim's validity by the Interior Department. Id. at 750. The Barrows court was thus faced with a question strikingly similar to that before us here: whether in mining claims located in national forests, activities on or around the claim that are incidental to mining may permissibly be regulated or prohibited, pending determination of claim validity, in order to protect the claim and surrounding federal lands from damage. And the Barrows court, though holding that such claims constitute property rights "unless and until the claim is finally declared void," nonetheless answered that question in the affirmative. That ruling is a strong indication that, on the merits, a takings clause challenge to the Forest Service policy of denying motorized access pending determination of claim validity would not succeed, for this court has interpreted the property right in an unvalidated claim as being one that may permissibly be restricted pending determination of validity, in order to guard against damage to the claim and surrounding land.
 
 
 [16]
 Section 1346(a)(2) states:
 The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of ... Any ... civil action or claim against the United States, not exceeding $10,000 in amount, founded ... upon the Constitution....