882 F.2d 407
 30 ERC 1331, 19 Envtl. L. Rep. 21,348
 Frederic D. SYLVESTER, Plaintiff-Appellant,
v.
U.S. ARMY CORPS OF ENGINEERS, Wayne J. Scholl, in his
official capacity as District Engineer of the Corps;
Patrick Kelley, in his official capacity as San Francisco
Division Engineer of the Corps; Robert W. Page, in his
official capacity as Assistant Secretary of the Army for
Civil Works; John O. Marsh, Jr., in his official capacity
as Secretary of the Army, Lee M. Thomas, in his official
capacity as Administrator of the Environmental Protection
Agency; and Perini Land & Development Company, a Delaware
corporation, Defendants-Appellees.
 No. 89-15592.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 13, 1989.
Decided Aug. 11, 1989.
 
 Terry J. Houlihan, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for plaintiff-appellant.
 John M. Collette, Collette & Erickson, San Francisco, Cal., Elizabeth Petterson, U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the Eastern District of California.
 Before CHOY, SNEED and NOONAN, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 Sylvester appeals the district court's denial of a motion for a preliminary injunction. We affirm.
 
 I.
 FACTS AND PROCEEDINGS BELOW
 
 2
 This appeal addresses issues not before this court in an earlier appeal in which we reversed the district court's issuance of a temporary injunction. See Sylvester v. United States Army Corps of Eng'rs, 871 F.2d 817 (9th Cir.1989) (Sylvester I ).
 
 
 3
 The facts and then existing procedural history were fully set out in our first opinion. See id. at 818-19. Following our remand to the district court, Sylvester filed a motion for a preliminary injunction to halt, in effect, the construction of the proposed golf course based on the Clean Water Act (CWA), 33 U.S.C. Sec. 1344(a) (1982). He also filed a motion for partial summary judgment based on his National Environmental Policy Act (NEPA) claims, 42 U.S.C. Sec. 4332(2)(E) (1982). Perini Land & Development Co. (Perini) opposed the preliminary injunction motion and also filed a partial summary judgment motion on the NEPA claims. The district court denied Sylvester's motion for a preliminary injunction and granted Perini's motion for partial summary judgment. Sylvester appealed to this court, seeking an emergency injunction halting construction of the proposed golf course. We affirm.
 
 II.
 JURISDICTION
 
 4
 The district court had jurisdiction under 28 U.S.C. Sec. 1331 (1982). We have jurisdiction under Sec. 1292(a).
 
 III.
 STANDARD OF REVIEW
 
 5
 We review the district court's refusal to grant injunctive relief for abuse of discretion. See Friends of the Earth, Inc. v. Coleman, 518 F.2d 323, 327 (9th Cir.1975). This court will set aside the Corps' decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law." 5 U.S.C. Sec. 706(2)(A) (1982).
 
 IV.
 ANALYSIS
 
 6
 Sylvester raises three objections to the district court's decision which we will address in turn. In sum, Sylvester argues that the Corps violated the CWA, the NEPA, and its own regulations in issuing a permit to Perini to fill eleven acres of wetlands in the process of building a golf course.
 
 A. Practicable Alternative under the CWA
 
 7
 First, we turn to Sylvester's claim that the Corps impermissibly accepted Perini's definition of the project as necessitating an on-site, eighteen hole golf course. By accepting this definition, Sylvester contends that the Corps' evaluation of practicable alternatives was skewed in favor of Perini.
 
 
 8
 The regulations implementing Sec. 404 of the CWA provide that "no discharge of dredged or fill material shall be permitted if there is a practicable alternative to the proposed discharge which would have less adverse impact on the aquatic ecosystem, so long as the alternative does not have other significant adverse environmental consequences." 40 C.F.R. Sec. 230.10(a) (1988) (emphasis added). The Corps defines a practicable alternative as an alternative that "is available and capable of being done after taking into consideration cost, existing technology, and logistics in light of overall project purposes." Id. Sec. 230.10(a)(2) (emphasis added). Further, because the golf course is not a water dependent activity, the Corps' regulations presume that practicable alternatives are available "unless clearly demonstrated otherwise." Id. Sec. 230.10(a)(3); see also Louisiana Wildlife Fed'n, Inc. v. York, 603 F.Supp. 518, 527 (W.D.La.1984), aff'd in part and vacated in part, 761 F.2d 1044 (5th Cir.1985) ("[C]lassification of an activity as 'non-water dependent' does not serve as an automatic bar to issuance of a permit ... [it] simply necessitates a more persuasive showing than otherwise concerning the lack of alternatives.").
 
 
 9
 In its Environmental Assessment (EA), the Corps defined the project's purpose as follows:
 
 
 10
 To construct an 18-hole, links style, championship golf course and other recreational amenities in conjunction with the development of the proposed Resort at Squaw Creek. Research conducted for the applicant has indicated that a quality 18-hole golf course is an essential element for a successful alpine destination resort.
 
 
 11
 Sylvester protests that the use of this definition impermissibly skewed the "practicable alternatives" analysis in favor of Perini. Specifically, Sylvester objects to the Corps' failure to consider off-site locations for the golf course, i.e., a site that was not contiguous to the rest of the resort complex. The Corps rejected consideration of such an alternative because it "did not meet [Perini's] basic purpose and need." The Corps did note, however, that two off-site locations were considered but rejected because of insufficient size and the potential for more severe environmental impacts.
 
 
 12
 In evaluating whether a given alternative site is practicable, the Corps may legitimately consider such facts as cost to the applicant and logistics. See Friends of the Earth v. Hintz, 800 F.2d 822, 833-34 (9th Cir.1986). In addition, the Corps has a duty to consider the applicant's purpose. As the Fifth Circuit observed: "[T]he Corps has a duty to take into account the objectives of the applicant's project. Indeed, it would be bizarre if the Corps were to ignore the purpose for which the applicant seeks a permit and to substitute a purpose it deems more suitable." Louisiana Wildlife Fed'n, Inc. v. York, 761 F.2d 1044, 1048 (5th Cir.1985) (per curiam) (footnote omitted).
 
 
 13
 Obviously, an applicant cannot define a project in order to preclude the existence of any alternative sites and thus make what is practicable appear impracticable. This court in Hintz quite properly suggested that the applicant's purpose must be "legitimate." Id. at 833. Yet, in determining whether an alternate site is practicable, the Corps is not entitled to reject Perini's genuine and legitimate conclusion that the type of golf course it wishes to construct is economically advantageous to its resort development.
 
 
 14
 By contrast, an alternative site does not have to accommodate components of a project that are merely incidental to the applicant's basic purpose. For example, in Shoreline Assocs. v. Marsh, 555 F.Supp. 169, 179 (D.Md.1983), aff'd, 725 F.2d 677 (4th Cir.1984), the Corps refused to issue a permit to a developer for building a number of waterfront town houses together with a boat storage and launching facility. The developer argued that the Corps' proposed alternative site for the town houses could not accommodate the boat storage and launch area. The court upheld the Corps' denial of the permit, observing that the boat facilities were merely "incidental" to the town house development. Id.
 
 
 15
 In this case, it is not the resort buildings that are at issue as were the town houses in Shoreline. The location of the resort buildings was fixed by decisions not involving the Corps of Engineers; and we held in Sylvester I that the location of the proposed golf course partially on wetlands did not "federalize" the entire development. See 871 F.2d at 823. Rather the issue in this case, Sylvester II, is whether this proposed location ignores other reasonable and practicable alternatives, including no golf course at all. Resolution of this issue requires that the relationship of the course to the entire project be considered. The Corps of Engineers did consider this relationship. Doing so was neither arbitrary nor capricious.
 
 
 16
 In no way does this conclusion conflict with Sylvester I. A relationship required to be considered in determining reasonable and practicable alternatives need not be of such significance as would be necessary to "federalize" the entire project. True, the golf course is not incidental to the resort; but then neither is it the compelling force, the centerpiece, of the resort. To illustrate, Shoreline would have resembled Sylvester I had the only issue been the location of the boat storage and launch sites, the location of the town houses already having been fixed on a site not subject to federal jurisdiction. Obviously the relationship between the town houses and the boat storage and launch sites would be considered in evaluating possible alternative sites of the latter two; equally obvious, this relationship should not "federalize" the entire project.
 
 
 17
 B. Evaluation of the Benefits of the Golf Course
 
 
 18
 Sylvester next argues that the Corps' analysis of the "reasonable alternatives" under the NEPA to the project was improper.[1] Sylvester contends that the Corps limited its consideration of the impact of the proposed development to only those of the golf course while simultaneously including the benefits from the entire resort complex. Sylvester argues that such an analysis violates the Corps' regulations. Similarly, Sylvester argues that the Corps' CWA "public interest analysis" was likewise skewed in favor of the project.
 
 
 19
 It is Sylvester's refusal to recognize the difference between a relationship that "federalizes" an entire project and one that is properly considered in evaluating benefits of a proposed federal action that lies at the bottom of his assertions that the Corps violated its regulations[2] and skewed its CWA public interest analysis.[3] The Corps did not, as Sylvester argues, weigh the benefits of the entire project against the environmental impacts of the golf course. The EA makes plain that the Corps followed its regulations and weighed only the benefits of the golf course to the resort.
 
 
 20
 We conclude, therefore, that the Corps quite properly did measure the benefit of the golf course in terms of its contribution to making the resort an economically viable year-round facility with all of its attendant advantages. This analysis was proper under both the CWA and the NEPA.[4]
 
 C. Irreparable Harm
 
 21
 In his final argument, Sylvester contends that in denying his motion for a preliminary injunction to halt the construction of the golf course the district court erred in concluding there was no irreparable harm resulting from the construction of the golf course. Presumably the irreparable harm to which Sylvester alludes is the alteration, or in his view, destruction of the wetlands. Because we conclude that the Corps action was neither arbitrary nor capricious, we reject his allegation of irreparable harm. Moreover, even if we accept the wetlands impairment as an irreparable loss, this would not carry the day for Sylvester because of our holding that Sylvester has no fair chance of succeeding on the merits.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 The Corps' regulations require it to include a discussion of the "reasonable alternatives" to the proposed development in an EA. See 33 C.F.R. pt. 325, app. B Sec. 7 (1988)
 
 
 [2]
 The Corps' regulations require that "[i]n all cases, the scope of analysis used for analyzing both impacts and alternatives should be the same scope of analysis used for analyzing the benefits of a proposal." 33 C.F.R. pt. 325 app. B, Sec. 7(3)
 
 
 [3]
 33 C.F.R. Sec. 320.4(a) (1988) requires the Corps to evaluate "the probable impacts, including cumulative impacts, of the proposed activity and its intended use on the public interest."
 
 
 [4]
 We also note that the public interest review under the CWA encompasses more factors than the NEPA analysis. The Corps' regulations require it to consider a broad range of interests that are not included under the "reasonable alternative" analysis under the NEPA. See 33 C.F.R. Sec. 320.4(a) (listing, for example, conservation, economics, aesthetics, recreation, and "the needs and welfare of the people"). Further, under the CWA, the Corps is not limited by a regulation similar to 33 C.F.R. pt 325 app. B Sec. 7, see supra note 2. As a consequence, the Corps could properly consider a wider range of facts in conducting its public interest analysis than the reasonable alternatives analysis