James J. WRIGHT, Joann M. Wright, James Jay Wright, and Glynis E. Wright, Plaintiffs,

v.

John INMAN, Forest Supervisor of the Humboldt National Forest, and the United States Forest Service, Defendants,

and

Independence Mining Company, Inc., Defendant–Intervenor.

No. CV–N–94–482–HDM.

United States District Court, D. Nevada.

Feb. 14, 1996.

Robert E. Lyle, Reno, NV, for plaintiffs.

Shirley Smith, Asst. U.S. Attorney, Reno, NV, Earl M. Hill, and Ross E. de Lipkau, Reno, NV, Steven P. Quarles and Mark C. Kalpin, Washington, DC, for defendants.

## ORDER

McKIBBEN, District Judge.

The court has considered defendant-intervenor Independence Mining Company's ("IMC")[1] Motion to Dismiss, or in the Alternative, for Summary Judgment (# 48)[2] and finds it suitable for disposition without oral argument pursuant to Local Rule 78–2.

## I. BACKGROUND

The United States Forest Service approved IMC's Jerritt Canyon Mine Expansion Project in the Humboldt National Forest ("the Forest"). Plaintiffs ("the Wrights") own James J. Wright Ranch, Inc. ("the Ranch"), located adjacent to the Forest. The Wrights contend that the Final Environmental Impact Statement ("FEIS") prepared by the Forest Service, and Defendant Inman's Record of Decision ("ROD") approving the Jerritt Canyon Mine Expansion Project, fail to comply with the requirements of the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. §§ 4321 *et seq.* Specifically, the Wrights' Amended Complaint (# 35) alleges that the FEIS does not contain adequate analysis of: (a) specific environmental impacts; (b) reasonable alternatives; and (c) mitigation measures. This action is brought by the Wrights pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 *et seq.*

## II. DISCUSSION

### A. The Motion to Dismiss

IMC moves to dismiss this action, pursuant to Federal Rule of Civil Procedure 12(b),

---

1. IMC moved to intervene in this case on August 5, 1994, (# 13) and the motion was granted on August 11, 1994 (# 21).

2. The federal defendants—the United States Forest Service and John Inman, Forest Supervisor of the Humboldt National Forest—have filed a concurrence in IMC's Motion for Summary Judgment (# 57).

on the ground that the plaintiffs have failed to exhaust their administrative remedies as required by law and Forest Service regulations. Under the APA, the challenged agency action must be "final" before it can be subject to judicial review. 5 U.S.C. § 704; *Clouser v. Espy*, 42 F.3d 1522, 1531–32 (9th Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 2577, 132 L.Ed.2d 827 (1995).

■ Under the related doctrine of "exhaustion,"

"an appeal to [a] 'superior agency authority' is a prerequisite to judicial review [under the APA] ... when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review."

*Clouser*, 42 F.3d at 1532 (alterations in original) (quoting *Darby v. Cisneros*, 509 U.S. 137, 152–54, 113 S.Ct. 2539, 2548, 125 L.Ed.2d 113 (1993)). Forest Service regulations expressly require the exhaustion of administrative appeal procedures available under 36 C.F.R. Part 215 (1994),[3] prior to the commencement of judicial review proceedings. 36 C.F.R. § 215.20 (1994).

■ IMC concedes that the Ranch, as a corporate entity, did pursue an administrative appeal that resulted in a "final agency action" reviewable by this court. However, having been dismissed by this court for lack of standing (# 34), James J. Wright, Inc. is no longer a party to this action. The court granted the Wrights, as the individual owners of the corporation, leave to amend the complaint to substitute in as party plaintiffs. *See* Order of January 19, 1995 (# 34). IMC now argues that the Wrights did not exhaust their administrative remedies because they, as individuals, did not appeal the ROD. Noting that "a corporation is regarded as a separate entity distinct from the individuals compromising it," *United States v. Van Diviner*, 822 F.2d 960, 963 (10th Cir.1987), IMC

contends that the court is without jurisdiction to review the Wrights' amended complaint because of their failure to satisfy the APA's exhaustion requirement.[4]

■ In response, the Wrights argue that the exhaustion requirement may be excused if resort to the agency would be futile. *See Clouser*, 42 F.3d at 1532; *SAIF Corp./Oregon Ship v. Johnson*, 908 F.2d 1434, 1441 (9th Cir.1990). As the Ninth Circuit Court of Appeals has noted:

"[W]here the agency's position on the question at issue appears already set, and it is very likely what the result of recourse to administrative remedies would be, such recourse would be futile and is not required."

*Clouser*, 42 F.3d at 1533 (internal quotation omitted) (alteration in original) (quoting *El Rescate Legal Serv. v. Executive Office of Immigration Review*, 959 F.2d 742, 747 (9th Cir.1991)).

Here, unlike *Clouser*, the futility exception to the APA's exhaustion requirement applies. It is apparent that the Wrights, appealing in their individual capacities, have raised issues identical to those already addressed in the administrative appeal they filed collectively as the Ranch. IMC has presented no evidence to suggest that had the Wrights filed their original appeal as individuals, the Forest Service would have treated it any differently.[5]

Because the Forest Service's position on the Wrights' concerns regarding the Jerritt Canyon mining operation "appears already set," recourse to administrative remedies would be futile. The Wrights therefore should not be required to exhaust their administrative remedies. Defendant-intervenor IMC's Motion to Dismiss is denied.

---

3. These appeal regulations were promulgated on November 4, 1993, and were fully effective when the ROD was issued in April 1994. *See* 58 Fed. Reg. 58904 (Nov. 4, 1993).

4. In their Opposition to IMC's Motion to Dismiss, the Wrights argue that the 12(b)(1) motion was untimely because it was filed after IMC's

Answer. However, absence of subject matter jurisdiction may be raised at any time. Fed. R.Civ.P. 12(h)(3); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1194 n. 2 (9th Cir.1988).

5. It is interesting to note that the Forest Service has not joined in IMC's Motion to Dismiss.

## B. The Motion for Summary Judgment

In the alternative, IMC moves for summary judgment. The Wrights challenge the FEIS for failing to comply with NEPA and adequately consider: (a) specific environmental impacts; (b) reasonable alternatives; and (c) mitigation measures. Whether an EIS contains an adequate discussion of the environmental impacts of a project and its alternatives presents an issue of law, not fact, which is appropriate for disposition on summary judgment. *Kilroy v. Ruckelshaus*, 738 F.2d 1448, 1452 (9th Cir.1984).

"NEPA is essentially a procedural statute." *Half Moon Bay Fishermans' Marketing Ass'n v. Carlucci*, 857 F.2d 505, 508 (9th Cir.1988) (internal quotation omitted). As a result, the APA mandates that the court only will set aside the Forest Service's approval of the Jerritt Canyon Mine Expansion Project if it was undertaken "without observance of the procedure required by law," 5 U.S.C. § 706(2)(D) (1994), or was "arbitrary and capricious." 5 U.S.C. § 706(2)(A) (1994). *See Half Moon Bay*, 857 F.2d at 508.

In determining whether the FEIS complied with NEPA, the court applies a "rule of reason," which asks "whether an EIS contains a reasonably thorough discussion of the significant aspects of the probable environmental consequences" of the proposed agency action. *See Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1519 (9th Cir.1992) (internal quotations omitted). The court will not "substitute [its] judgment for that of the agency concerning the wisdom or prudence of the proposed action," *Laguna Greenbelt, Inc. v. U.S. Dep't of Transp.*, 42 F.3d 517, 523 (9th Cir.1994) (internal quotation omitted), and will not direct a particular substantive outcome. *Strycker's Bay Neighborhood Council, Inc. v. Karlen*, 444 U.S. 223, 227–28, 100 S.Ct. 497, 499–500, 62 L.Ed.2d 433 (1980) (per curiam). Rather, the court will consider whether the FEIS fostered informed decision-making; if the

Forest Service has taken a "hard look" at the environmental consequences of the proposed Jerritt Canyon Mine Expansion Project, the court will not disturb the agency's decision. *See Idaho Conservation League*, 956 F.2d at 1519; *Half Moon Bay*, 857 F.2d at 508.

### 1. The FEIS' Analysis of Environmental Impacts

The Wrights contend that the Forest Service's decision to approve the Jerritt Canyon Mine Expansion Project was arbitrary and capricious because the Service failed to address or take a "hard look" at several potential environmental impact issues. IMC and the Forest Service argue that the record supports their position that the Forest Service took the requisite "hard look" at the environmental consequences of the mining project, and had a rational basis for the conclusions reached. The court will consider in turn the specific issues raised by the Wrights.

#### a. Water Quality Issues

The Wrights claim that the FEIS inadequately addresses water quality issues. The Wrights point to an independent analysis they commissioned of the data underlying the FEIS, *see* Letter of May 23, 1994, from Summit Engineering to Jack Carlson (District Ranger, Humboldt National Forest) attached as Ex. 1 to Plaintiff's Opposition (# 52), and argue that the Forest Service's consideration of water quality issues (and quantity issues, discussed below) lacked sufficient information to inform the public of possible environmental impacts. The Wrights' reliance on the Summit Engineering analysis presents two problems.

First, when reviewing an agency's analysis under NEPA, the court's examination is limited to the administrative record, which in this case is composed primarily of the ROD, the EIS, and related supplemental material.[6] *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420, 91

---

**6.** In their Opposition to the Motion for Summary Judgment, the Wrights suggested that the court order a supplemental briefing schedule to allow a full review of the administrative record, which had not yet been submitted in its entirety to the court. However, the bulk of the record consists of the FEIS and the ROD, which have been previously submitted to the court. The Wrights admit they have had access to these documents and to the underlying documents since the time of their issuance. The court therefore finds supplemental briefing unnecessary.

S.Ct. 814, 825–26, 28 L.Ed.2d 136 (1971). The "focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *National Audubon Soc'y v. U.S. Forest Service*, 46 F.3d 1437, 1446 (9th Cir.1993) (internal quotation omitted). Therefore, it is not "appropriate ... for either party [in this action] to use post-decision information as a new rationalization either for sustaining or attacking the [Forest Service]'s decision." *See Association of Pacific Fisheries v. EPA*, 615 F.2d 794, 811–12 (9th Cir.1980). The Wrights have not cited to any authority to support expanding the record to include the Summit Engineering report, and have failed to persuade the court that matters outside the administrative record should be considered.

■■■■ Second, because review of the FEIS and related documents "requires a high level of technical expertise," the court must "defer to the informed discretion of the responsible federal agencies." *See Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 377, 109 S.Ct. 1851, 1861, 104 L.Ed.2d 377 (1989). When scientific " 'specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts ... even if a court might find contrary views more persuasive.' " *Greenpeace Action v. Franklin*, 14 F.3d 1324, 1332 (9th Cir.1992) (quoting *Marsh*, 490 U.S. at 378, 109 S.Ct. at 1861–62). As the Ninth Circuit has stated in another NEPA case involving a Forest Service mining plan of operation, a "disagreement among experts does not invalidate an EIS." *Havasupai Tribe v. Robertson*, 943 F.2d 32, 34 (1991) (per curiam) (internal quotation omitted), *cert. denied*, 503 U.S. 959, 112 S.Ct. 1559, 118 L.Ed.2d 207 (1992). The court must apply the highly deferential "arbitrary and capricious" standard to its consideration of the scientific determinations contained in the FEIS. *See id.; see also Baltimore Gas & Electric Co. v. Natural Resources Defense Council, Inc.*, 462 U.S. 87, 103, 103 S.Ct. 2246, 2255, 76 L.Ed.2d 437 (1983) (the "reviewing court must generally be at its most deferential").

■■■■ The primary concern of the Wrights with regard to water quality issues appears to be the potential for harmful levels of acid rock drainage. However, review of the FEIS reveals that the Forest Service undertook a rigorous investigation of acid rock drainage potential,[7] *see* FEIS 3–5 to 3–10, and considered the issue in the context of both surface water and groundwater quality concerns. *See* FEIS 4–28 to 4–30; 4–36 to 4–27. The agency collected and analyzed, using both static and kinetic testing methods, a total of 375 waste rock samples from the materials to be mined. *See* FEIS 3–5 to 3–10. The results generally revealed that the mine material has a low potential for acid rock drainage. *See* FEIS 4–6 to 4–8; 4–28 to 4–29.

Moreover, the FEIS discussed a waste rock characterization and handling program that, as mining proceeds, would identify and properly handle potentially acid-forming waste. *See* FEIS 4–7 and App. A. The FEIS also adopted a surface water monitoring plan to detect any precursors to acid rock drainage so that appropriate remedial action could be taken, if necessary. *See* FEIS 4–7, 4–29, and App. B.

The court finds no indication that the Forest Service failed to adequately consider the potential environmental consequences of waste rock drainage in the Jerritt Canyon Mine Expansion Project. The Wrights' disagreement with the scientific conclusions reached in the FEIS, and their speculative lack of confidence in the monitoring plans, are insufficient reasons to justify invalidating the FEIS or setting aside the Forest Service's subsequent decision to approve the Project.

**b. Water Quantity Issues**

■■■■ The Wrights next contend that water quantity issues were inadequately addressed. The Forest Service's analysis of surface water quantity issues utilized a standard computer model to calculate potential

---

**7.** The FEIS also examined the potential for waste rock to release trace elements like arsenic and nitrate. *See* FEIS at 3–10 to 3–11.

water losses. *See* FEIS 4–22 to 4–25. The FEIS then considered in detail the issues of potential losses in quantity, or changes in flow regimes, of surface water and groundwater. *See* FEIS 4–22 to 4–25; 4–31 to 4–34; *see also* 4–34 to 4–36.

The FEIS also specifically addressed concerns expressed by the Wrights that the mining operation might adversely affect vested water rights. In direct response to a comment submitted on behalf of the Wrights regarding the draft EIS, the Forest Service stated in the FEIS:

> Approval of any [Plan of Operations] by the [Forest Service] does not authorize a mining company to infringe upon the water rights of other parties. Water rights and their administration are under the authority of the Nevada State Engineer's Office.

FEIS 6–70; *see also id.* 6–38, 6–46, 6–56, 6–58, and 6–63.

Water rights, and the consequent allocations of water quantities, are controlled exclusively by the State of Nevada. *See* NRS §§ 533.090 *et seq.* The Nevada Department of Conservation and Natural Resources, Division of Water Resources, commented specifically on the water rights issue in a letter to the Forest Service:

> If any prior [water] right is affected by the mining activity, the State Engineer would be required by law to protect those prior water rights. Mitigation measures may be by agreement between the parties provided the appropriate water rights are in place....

FEIS 6–89 (letter from Nevada Deputy State Engineer, Hugh Ricci, to Don Carpenter, Forest Service, March 15, 1994). Elsewhere in the FEIS, the Forest Service noted that "IMC currently has permits for groundwater use ... that could potentially be used to mitigate or offset surface water impacts." FEIS at 6–70. Other than recognizing the concerns expressed about water rights, the Forest Service had no additional legal obligation to address the issue. *See Nevada Land Action Ass'n v. U.S. Forest Service,* 8 F.3d 713, 719 (9th Cir.1993) ("We are unable to find any authority ... suggesting that the Forest Service must consider vested water rights in its planning process.").

### c. Grazing Issues

 The Wrights allege that the FEIS failed to consider adequately "economic impacts to ranching industries most directly affected" by the Jerritt Canyon Mine Expansion Project. *See* Amended Complaint at ¶ 9. However, the FEIS expressly considered impacts to livestock grazing uses in the project area. *See* FEIS 3–68 to 3–70; 4–73 to 4–76. The FEIS analyzed direct, indirect, and cumulative impacts to the Jerritt Canyon Cattle and Horse Allotment, the specific individual grazing allotment used by the plaintiffs. *See* FEIS 4–73 to 4–76.

### d. Air Quality Issues

 The Wrights contend that the FEIS does not adequately address air quality issues. However, the FEIS includes a thorough summary of the detailed analysis of potential impacts on air quality conducted by the Forest Service. *See* FEIS 4–19 to 4–22. The analysis considered air pollutant emissions from mining, crushing, and construction activities within the Jerritt Canyon Project Expansion Area, and found that the cumulative effects of the emissions on air quality would be minimal. The FEIS also noted that air quality control mitigation measures would prevent exceedences of the State and National Ambient Air Quality Standards. FEIS 4–20.

The FEIS addressed the Wrights' specific concern about the nuisance created by dust invading their home and property. *See* FEIS 6–61. The FEIS further dealt with the Wrights' other concerns about monitoring and mitigation of fugitive dust emissions. *See id.*

### e. Wetlands Issues

 The Wrights suggest that the Forest Service inadequately considered impacts to wetlands. However, the record reveals that the Forest Service, working in conjunction with the Army Corps of Engineers, gave thorough consideration to wetlands issues. *See* FEIS 3–34 to 3–37; 3–49 to 3–50; 4–37 to 4–41.

### f. Fugitive Weed Issues

■ Finally, the Wrights allege that the FEIS failed to consider fugitive weed control measures. Fugitive weeds were not identified as an issue for scoping in the environmental impact review process. *See* FEIS Table 1.2, at 1–11. A review of the record supports IMC's contention that the sole comment on this subject received by the Forest Service during the entire process was from the Wrights. *See* FEIS 6–60 to 6–61. The Forest Service responded to the Wrights' concern as follows:

> Comment noted. Continuance of the existing noxious weed control program will be included in the final [Plan of Operations]. The program will include conducting surveys for noxious weeds within the mining area and control of any noxious weeds within the mining area.

FEIS 6–60.

The Forest Service adequately responded to the comment and committed to further mitigating the perceived weed problem by imposing conditions on IMC's approved Plan of Operations.

### g. Conclusion

The court finds that the Forest Service met its procedural obligations under NEPA and took the requisite "hard look" at the environmental impacts of the Jerritt Canyon Mine Expansion Project. The FEIS reasonably sets forth sufficient information "to foster 'informed decision-making.'" *See Northern Alaska Envtl. Ctr. v. Lujan,* 961 F.2d 886, 890 (9th Cir.1992) (quoting *California v. Block,* 690 F.2d 753, 761 (9th Cir.1982)).

### 2. Analysis of Reasonable Alternatives

■ The Wrights allege that in considering the environmental impact of the proposed project, the Forest Service failed to include in the FEIS an evaluation of the environmental consequences of the reasonable alternatives to the proposed action. *See* Amended Complaint at ¶¶ 11, 12.

NEPA requires the Forest Service to have included in the FEIS a discussion of alternatives to the proposed action for the Jerritt Canyon Mine Expansion Project. *See* 42 U.S.C. § 4332(2)(C)(iii). The FEIS analyzed IMC's original proposal, which involved open pit mining of the New Deep, Burns Basin, Saval, and Steer ore deposits, as Alternative B. *See* FEIS 2–11 to 2–22. Six other alternatives, including the "no action" alternative (Alternative A), also were analyzed. *See* FEIS Chapter 2. The FEIS' discussion of these alternatives focussed on key issues like waste rock disposal and reclamation alternatives. *See id.* These are issues of primary concern to the Wrights. *See* Amended Complaint at ¶ 12. The FEIS described in detail the proposed action and the six alternatives. *See* FEIS 2–8 to 2–32; *see also* FEIS Maps 2.2, 2.5 to 2.9; Tables 2.1 and 2.2. The FEIS then assessed the environmental impacts to the soil, air quality, surface water resources, groundwater resources, wetlands, vegetation, wildlife, livestock grazing, visual resources, and other issues of concern associated with each of the alternatives. *See* FEIS Chapter 4. Contrary to the Wrights' allegations, the FEIS compares in some detail the relative environmental advantages and disadvantages of the alternatives with regard to waste rock disposal, reclamation alternatives, and mitigation measures. *See id.* Applying the "rule of reason" standard, the court finds that the FEIS contained a "reasonably thorough discussion of the significant aspects of the probable environmental consequences" of all of the alternatives.

■ The Forest Service considered a range of reasonable alternatives, as "dictated by the nature and scope of the proposed action, and sufficient to permit a reasoned choice." *See Idaho Conservation League,* 956 F.2d at 1520 (internal quotations and citations omitted). Although "the concept of alternatives must be bounded by some notion of feasibility," *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 551, 98 S.Ct. 1197, 1215–16, 55 L.Ed.2d 460 (1978), the FEIS even evaluated alternatives which IMC contends were not economically feasible.[8]

---

8. The Wrights appear to take issue with the Forest Service's use of economic feasibility as a factor in its analysis of alternatives. *See* Amend-ed Complaint ¶ 12. However, in evaluating the reasonableness of a given alternative, an agency "may legitimately consider such facts as cost to

Finally, the Forest Service demonstrated that it considered reasonable alternatives by approving in the ROD a hybrid combination of Alternative C and Alternative F (the "selected alternative"). Like IMC's mining plan, Alternative C proposed open pit mining of all areas, but it also included additional mitigation measures to enhance waste rock dump stability and to improve reclamation and revegetation potential. Alternative F, which imposes underground mining on the New Deep deposit, minimizes or eliminates many of the environmental impacts associated with open pit mining of that deposit. The selected alternative ensures greater environmental protections than the proposal advanced by IMC. The Forest Service took a "hard look" not only at the environmental consequences of IMC's proposed action, but at the other alternatives as well, and reasonably decided to approve a combination of Alternative C and Alternative F as the selected alternative.

### 3. Analysis of Mitigation Measures

The Wrights allege that the FEIS "fails to discuss or detail mitigation measures that could be undertaken to avoid or minimize the adverse environmental effects of the mining project." *See* Amended Complaint at ¶ 10. The court finds no support in the record for this allegation. On the contrary, the FEIS is replete with consideration of possible mitigation measures. *See* FEIS 2–39 to 2–51; *see also* FEIS Chapter 4 (comparing mitigating effects of seven alternatives considered); App. A (Waste Rock Characterization and Handling Plan); App. C (Wetlands Mitigation Plan).

Moreover, although "NEPA imposes no substantive requirement that mitigation measures actually be taken," *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 353 n. 16, 109 S.Ct. 1835, 1847 n. 16, 104 L.Ed.2d 351 (1989), the Forest Service required IMC to undertake an exhaustive list of mitigation measures. *See* ROD at 3–6, 10–12. As discussed above, in approving the selected alternative over IMC's proposed action, the Forest Service ensured that greater

environmental protections would be implemented. The adoption of Alternative F's underground mining plan for the New Deep deposit is itself a highly significant mitigation measure over IMC's plan for an open pit mine at that site.

The court finds that the FEIS satisfied NEPA, which "requires only that mitigation be discussed in sufficient detail to ensure that environmental consequences have been fully evaluated." *See Laguna Greenbelt, Inc.,* 42 F.3d at 528. The Forest Service went beyond merely satisfying the procedural requirements of NEPA and adopted numerous mitigation measures to avoid or minimize the adverse environmental effects of the mining project.

### C. Conclusion

The court finds that the FEIS contains a "reasonably thorough discussion of the significant aspects of the probable environmental consequences" of the proposed Jerritt Canyon Mine Expansion Project. *See Idaho Conservation League,* 956 F.2d at 1519 (internal quotations omitted). As a result, the court will not disturb the Forest Service's decision to approve the Project. *See Kleppe v. Sierra Club,* 427 U.S. 390, 410 n. 21, 96 S.Ct. 2718, 2730 n. 21, 49 L.Ed.2d 576 (1976); *Idaho Conservation League,* 956 F.2d at 1519; *Half Moon Bay,* 857 F.2d at 508.

### III. CONCLUSION

Defendant-intervenor IMC's Motion to Dismiss is denied. IMC's alternative Motion for Summary Judgment, in which the federal defendants have joined, is granted. Judgment shall be entered in favor of defendants Inman and the U.S. Forest Service and defendant-intervenor IMC.

It is so ORDERED.

the applicant and logistics." *Sylvester v. U.S. Army Corps of Engineers,* 882 F.2d 407, 409 (9th Cir.1989).